Miller, J.
The plaintiff claims to recover of the defendant, as trustee of a manufacturing company, for a failure of *536 the company to make and file a report, as required by section 12, chapter 40, Session Laws of 1848. The law in question is of a highly penal character, and in case of failure to comply with its requirements the trustees are made “jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made.”
The statute in question was, no doubt, intended to include all ordinary debts which might be contracted in the prosecution of the legitimate business of the company, but does not, I think, embrace such as might be imposed upon the company by fraud or improper practices of the creditor. It evidently meant that the honest creditor, who had trusted the company in good faith in connection with its business transactions, should be entitled to prosecute any of the trustees for the failure of its officers to perform the duty required by the section cited. I think that the evidence in this case does not show the existence of a debt within the statute which authorizes the enforcement of a penalty against the defendant as a trustee. The facts upon which the plaintiff’s claim is founded are somewhat peculiar in their character. The alleged debt consisted of money credited to plaintiff on the company’s books, which it was claimed had been borrowed by the plaintiff’s husband for the benefit of the corporation. The circumstances attending the transaction are suspicious, strange and remarkable, and the existence of any such obligation was only known to Adams, the plaintiff’s husband, who was a trustee and secretary of the company, and Brown, the treasurer, who was also a trasteé. These parties had charge of the books, and obviously acted together to create an impression that the business of the company was prosperous, and by false statements deceived the defendant and the other trustees, causing too large dividends to be declared when there were no means of paying the same, and by these means procured large loans from the defendant and his co-trustee, Cochran, ostensibly for the benefit of the company. The' evidence also shows a fraudulent concealment of the alleged borrowing of the plaintiff’s money, and that the transaction *537 was never brought to the attention of the board of trustees, or to the knowledge of the defendant. The husband had been acting as the wife’s agent, and, according to his testimony, the contract for the loan was made by him with the treasurer, at an usurious rate of interest of one per cent a month. In no other instance had money been borrowed upon any such terms, and the act itself was an illegal transaction and a misdemeanor. Even although the corporation might not plead usury, it by no means follows that innocent parties, who have not assented to or become parties to such a contract, may not avail themselves of the illegality as a defense. Independent, however, of the consideration last named, the treasurer and secretary had no authority to make the loan as claimed, or, in fact, to borrow money otherwise than was provided. The second by-law of the company declares that no promissory note shall be given by the company, unless authorized by the board of trustees, and with this restriction it is quite obvious that the officers named were not vested with any direct power to bind the company, or to create any express obligations for the payment of loans. Concede that the corporation itself had the power to borrow money, no such power can be implied in favor of any agent, officer or trustee, unless the circumstances of the case are such as to warrant the conclusion that such an authority had been conferred. And even if there was such an implied power, it cannot be claimed that the secretary and treasurer had authority to borrow money otherwise than on the usual terms, and in the ordinary transactions of the business of the company. The alleged borrowing of the wife by the secretary, at twelve per cent interest, was not such a transaction as was warranted by the circumstances existing. The proof does not show that any exigency existed which demanded the loan, or that the money was appropriated to the payment of any pressing or specific debt when received. Although the referee has found that the money was used by the treasurer to pay the debts of the corporation, the proof of that fact is exceedingly doubtful. If it was so used, it was only with the knowledge of the plaintiff’s agent and his *538 co-conspirafcor, and the use of the money, was not the act of the corporation and was not ratified by its officers. A very little reflection will show the danger of such an exercise of authority by an officer of a corporation. If tolerated, the other officers, his associates and the stockholders, would be at the mercy of those who, perchance, had possession of the books of the company, and might thus be made the victims of the grossest fraud and injustice. For if the secretary of a manufacturing company, or a trustee, has the right to loan money for the corporation on his own authority, and without the knowledge of the board of trustees, at twelve per cent interest, then he has the same right to loan at fifty per cent. Both rates are usurious, exorbitant, extravagant, and inconsistent with a proper administration of the affairs of any company, and calculated to produce pecuniary loss, ruin and insolvency. That the larger amount is more so does not alter the principle. Such a transaction cannot be upheld as a bona fide debt in an action for a penalty against the trustees of a corporation. If made for the benefit of the officer who negotiated it, there would be no hesitation in pronouncing it a fraud and an imposition upon innocent trustees and the stockholders, and in determining that no action could lie for a penalty under the statute. So, if Mus. Adams had notice of the facts, there would be no question that she could not recover. Even if innocent parties dealing with the officers or agents of a corporation have a right to rely upon the apparent authority of such agents, those who have constructive notice of the limited authority of the agent, cannot invoke this rule. Mrs. Adams knew that her husband was secretary of the company. He knew that he had no such authority as he claims he exercised. He had been her agent in the transaction of her business generally, and particularly in the transfer of the business of Hilliard & Adams, a few months previous, to the company, and he had received her shares of the stock issued upon the assignment of her interest which he held in his own name, and he clearly acted as her agent in making the alleged loan. (Owen v. Cawley, *539 36 N. Y., 600; Abbey v. Deyo, 44 id., 343.) As such agent, he is chargeable justly with knowledge or constructive notice, that his authority as an officer of the company was limited and restricted. (Adriance v. Boome, 52 Barb., 399 ; Dabney v. Stevens, 40 How., 341.) His notice and knowledge must be regarded as notice to and knowledge of the wife, according to the well settled principle, that a principal is chargeable with all the knowledge the agent possesses in the transaction of the business he has in charge. Having such knowledge and notice, it is to be assumed, that she is bound by the actual authority with which her husband was invested to bind the company. She cannot relieve herself from her husband’s and her agent’s act upon the hypothesis that she did not know, for the law holds that she was bound to know what authority her agent actually had. As it is proved beyond question, Adams acted as the agent of his wife in this transaction, and the circumstances of themselves show fraud in making the loan when there was no necessity for it, and fraudulent concealment after it was made, she cannot maintain this action.
Some other points are urged in reference to the culpable omissions of the plaintiffs husband, and among them, his neglect to prepare, file and' publish the report as he was instructed, and as it was his duty to do, having been furnished with a copy of the general manufacturing law, and his attention specially directed to the importance of complying with the twelfth section. But these considerations are not essential to uphold the judgment, for even if he had only in view the payment to his wife of a large and unusual rate of interest, it is enough, with the other circumstances presented, to sustain the defence.
There was no error in the admission or rejection of evidence, and the other points urged by the plaintiff’s counsel it is not important to consider if the views expressed are correct.
The judgment was right and should be affirmed, with costs.
All concur; Rapallo, J., not voting.
Judgment affirmed.