THE BOARD OF METROPOLITAN POLICE OF THE CITY OF DETROIT v. THE BOARD OF AUDITORS OF WAYNE COUNTY.

*Constitutional law—Liquor law of 1887—Extension of power to board of metropolitan police of Detroit—Patrolling suburbs to city.*

1. The attempted extension of powers to the board of metropolitan police of the city of Detroit by section 33 of Act No. 313, Laws of 1887, to *police* certain townships in Wayne county for the purpose of enforcing the provisions of said act therein, is illegal.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

*a*—Act No. 78, Laws of 1865, establishing a police government for the city of Detroit, was considered in *People v. Mahaney*, 13 Mich. 481, and held sufficient to replace a city marshal by the officers substituted.

*b*—The reference in the title to a police government cannot mean a government in the ordinary sense in which municipal and local governments exist, and the word *system* would have been more appropriate, and not misleading.

*c*—Under our system we can have no governments, general or special, that do not immediately represent a *popular* constituency, and no properly called governmental power can be lodged anywhere else.

*d*—The Legislature has power to confer upon townships, cities, villages, and boards of supervisors *local* legislative and administrative powers such as are suited to their condition; but there

is no other power mentioned in the Constitution for conferring similar public governing authority elsewhere, and these bodies are all created by popular elections.

e—It was held in *Attorney General v. Detroit Common Council*, 58 Mich. 213, that the people could not be subjected to any delegated powers of government not exercised by their own representatives.

f—The police board and its appointees or deputies can only be regarded as lawfully exercising ministerial and administrative functions in obedience to the statutes of the State and the ordinances of Detroit, and no more; and under the title of the creative act they are confined, in their legal action, to such *territorial* limits as belong to the city of Detroit, and such as might be allowed to be covered by city appointees if the city itself appointed its own police. *Allor v. Wayne Co. Auditors*, 43 Mich. 76.

Application for *mandamus* to compel respondents to pay the expense of patrolling certain territory in townships outside of Detroit, under the liquor law of 1887. Submitted January 11, 1888. Denied March 2, 1888. The facts are stated in the opinion.

*William A. Moore* (*Edwin F. Conely*, of counsel), for relators.

*George F. Robison*, prosecuting attorney, for respondents.

CAMPBELL, J. This is an application to compel the respondents to pay out of the treasury of Wayne county the expense claimed by relators to have been incurred in patrolling certain territory in the townships outside of Detroit under section 33 of Act No. 313, Laws of 1887, popularly known as the "Liquor Law." A defense was put in by respondents to the effect that no duty such as that statute purports to lay upon them can be legally enforced. The argument was chiefly based on grounds independent of those affecting the constitutional objections applicable to other questions arising on the law, and the case is of such a nature that we prefer to base our action on these separate grounds

68 MICH.—37.

without reference to the general scope and character of the statute.

The section before us for consideration reads as follows:

"That for the better enforcement of the provisions of this act in that portion of the county of Wayne which forms the suburbs to the city of Detroit, the jurisdiction of the board of metropolitan police of said city is hereby extended over the townships of Springwells, Greenfield, Hamtramck, and Grosse Point in said county. And it shall be the duty of the board of metropolitan police to police said townships sufficiently strong to enable them to enforce the provisions of this act within the limits thereof, and for that purpose said board of metropolitan police are authorized to increase the police force under their control, to mount said increase, or any portion thereof, and are vested with the same authority as is now conferred upon them within the corporate limits of the said city of Detroit, and may use all or any portion of the force under their control.

"The police force so employed in said townships shall have and are hereby vested with the same powers to enforce the provisions of this act, and to preserve the peace, as is by general law conferred upon the constables therein. The expenses of maintaining such extra force of police in said township shall be paid monthly by the county of Wayne out of the moneys paid into the treasury of said county under the provisions of this act, on duly certified vouchers therefor, prepared and submitted by said board of metropolitan police to the board of county auditors of said county, who are hereby directed to audit and pay the same in the same manner as other claims for services against the county of Wayne are audited and paid."

The ninth section of the liquor law requires one-half of the moneys paid for liquor taxes to be paid into the general fund of the county treasury.

The metropolitan police board was originally created under an act of 1865 entitled—,

"An act to establish a police government for the city of Detroit." Laws of 1865, p. 99.

Each commissioner must be a resident freeholder of Detroit, appointed by the Governor and Senate. All of the general

powers and duties of the board and its appointees are local, and some of them are new and peculiar. There have been more or less changes and amendments, but none that are important in the present inquiry.

In *People v. Mahan'y*, 13 Mich. 481, the validity of this act, so far as it authorized the creation of the force, was considered, and it was held sufficient to replace a city marshal by the officers substituted. Several other questions were discussed, but not decided, but reserved for future consideration as not necessarily in the case. No case has since been before this Court having much bearing on the validity of the statute. But the present case requires some consideration of the powers lawfully belonging to such a board.

Although the title of the act refers to a police government, this cannot mean a government in the ordinary sense in which municipal and local governments exist. The word "system" would have been more appropriate, and not misleading. Under our system we can have no governments, general or special, that do not immediately represent a popular constituency, and no properly called governmental power can be lodged anywhere else. Our State Constitution has provided for local municipalities, embracing counties, cities, villages, townships, and school districts, which it has been held mean such bodies of those names as were of a nature familiar and understood. The Legislature has power to confer upon townships, cities, villages, and boards of supervisors local legislative and administrative powers such as are suited to their condition. But there is no other power mentioned in the Constitution for conferring similar public governing authority elsewhere, and these bodies are all created by popular elections. It was held in *Attorney Gen. v. Detroit Common Council*, 58 Mich. 213 (24 N. W. Rep. 887), that the people could not be subjected to any delegated powers of government not exercised by their own representatives.

It is evident, on all constitutional principles, that the police board and its appointees or deputies can only be regarded as lawfully exercising ministerial and administrative functions in obedience to the statutes of the State and the ordinances of Detroit, and no more. And under the title of the act creating them they are confined, in their legal action, to such territorial limits as belong to the city of Detroit, and such as might be allowed to be covered by city appointees if the city itself appointed its own police. See *Allor v. Wayne Co. Auditors,* 43 Mich. 76 (4 N. W. Rep. 492).

It is not competent for the Legislature to enlarge their powers, in the way attempted here, by an act which is in no way amendatory to the act of 1865, but which takes the city board and as such gives it jurisdiction over a territory foreign to the city. The adjacent townships have no more legal dependence on a city than any others, and are just as much entitled to an independent existence. Not only is the police board a city board, but it is composed entirely of city resident freeholders. No one outside of the city can be represented on it even by the Governor's appointment.

This local board is not only given by this act the power to send the city police into the townships, but also is given what the statute calls "jurisdiction" there. And this is not a mere form, for it rests entirely in their discretion how many and what men shall be sent, and where they shall be detailed, in each township. All of the arrangements are left exclusively to the board, who can incur such expenses as they choose, and make the county treasury pay for it. The city of Detroit bears all the ordinary expenses of the board, and by this statute the county at large must bear the rest. It is nominally drawn from the liquor taxes in the county treasury, but those go into the general fund of each county, for general county purposes, and to that extent lessen the necessity of ordinary taxation, so that it amounts to the same

thing as direct taxation. The result is that the local board of Detroit draws from the funds of the county to carry on its own work in part of the townships entirely beyond its own jurisdiction, and at the expense as well of the cities and townships where none of this money is spent as of the townships patrolled.

We think that no such extension of powers can be granted, and that the attempt to make the grant is illegal.

It was claimed on the argument that this was only an enlargement of the police district. But supposing—what we are not prepared to decide—that the Legislature may create districts at its pleasure, it has not pursued the constitutional requisites for doing it and has not attempted to do it. There is no attempt to make this board cease to be a city board. All of its localized duties and facilities remain, and the taxation that provides for most of its outlays is city taxation. Its duties in connection with the city courts and the city government remain entirely unchanged. The four towns are in no way represented in its action any more than the rest of the county.

We are not, therefore, required to consider whether the Legislature can create police districts not conforming to any municipal subdivision of the State, or to pass upon any of the other questions of power which present themselves somewhat seriously concerning this exceptional variation in our system of local government. There are recognized limits to legislative power in this regard which it may be desirable to have settled, but which cannot be discussed here. We cannot pass upon them until they are brought here in some course of litigation, and therefore nothing can be assumed from our failure heretofore or now to rule upon them. The legislation upon Detroit matters has been so often changed and so peculiar as to require care in judging it.

The *mandamus* is denied.

CHAMPLIN, MORSE, and LONG, JJ., concurred.

SHERWOOD, C. J. (*dissenting*).  The petitioners in this case ask for a *mandamus* requiring the respondents to hear and pass upon, and, if found correct, audit and pay, a certain claim of the petitioners for police service, rendered and presented by them to be audited and paid as provided for in Act No. 313, sections 9 and 33, pp. 453, 459, Laws of 1887.

The relators in their petition set forth the following as grounds for the writ:

"1. That they are the board of metropolitan police of the city of Detroit, organized and exercising their functions and authority under and by virtue of an act of the Legislature of the State of Michigan entitled 'An act to establish a police government for the city of Detroit,' approved February 28, 1865, and various other acts and parts of acts amendatory thereof and supplementary thereto.

"2. That for the better enforcement of the provisions of an act of the Legislature of the State entitled 'An act to provide for the taxation and regulation of the business of manufacturing, selling, keeping for sale, furnishing, giving, or delivering spirituous and intoxicating liquors, and malt, brewed, or fermented liquors, and vinous liquors, in this State, and to repeal all acts or parts of acts inconsistent with the provisions of this act,' approved June 28, 1887, in that portion of the county of Wayne which forms the suburbs of the city of Detroit, and in pursuance of the provisions of the said act, the petitioners, on September 29, 1887, duly detailed two patrolmen of the police force under their charge and control for the special duty of enforcing the provisions of the act last 'mentioned in the townships of Hamtramck and Grosse Point, in said county of Wayne, and on and through the day last mentioned, for the purpose aforesaid, kept and maintained in the townships above named a police force consisting of two patrolmen so detailed as aforesaid, who, on account of the extent of territory to be observed by them, were by the petitioners mounted on horseback.

"3. That the actual expense of maintaining such police force in said townships, for the purpose and during the time above mentioned, was the sum of six dollars, which was paid by the petitioners, for the use of two saddle horses by said patrolmen in the performance of the duty for which they had been detailed, but no other expense was incurred in that behalf during the month of September.

"4. That on September 30, 1887, at the meeting of the board of metropolitan police, the account of said expenditure was duly considered and approved by the board, and by them ordered to be presented to the board of auditors of the county of Wayne, for allowance, auditing, and payment on voucher as explained in the next paragraph.

"5. That on October 1, 1887, by and in accordance with the direction of the board of metropolitan police, the secretary thereof transmitted and submitted to the board of auditors aforesaid a duly certified voucher showing the expense of maintaining such police force in the townships aforesaid, as above explained, but the said board of auditors wholly refused, and from thence hitherto have wholly refused and still do refuse, to hear, consider, pass upon, or in any wise entertain the same, alleging in substance and effect as a reason for their conduct that they were not obliged so to do by the law of the land."

The answer of the respondents is as follows:

"1. They say that the facts set forth in the petition in the cause are substantially true.

"2. That these respondents were informed by the petitioners that the probable cost of the maintenance of such policemen as they propose to locate in the four townships mentioned in said act will be annually not less than $25,000; that the respondents were advised by the prosecuting attorney of said county that there was a grave doubt as to the validity and constitutionality of that provision of said act requiring the county to pay such expense.

"3. That, acting under his advice, respondents refused to pay said claim for the express purpose of obtaining from this Court an early decision of the validity of the provision under which the claim was made."

The case was heard upon the foregoing petition and answer. It will be noticed that the unconstitutionality of the act referred to is the only defense urged against the prayer of the petition by the respondents.

It is claimed the law infringes that clause of the Constitution which requires that "no law shall embrace more than one object, which shall be expressed in its title."

Also that clause which says:

"No law shall be revised, altered, or amended, by reference

to its title only, but the act revised, and the section or sections of the act altered or amended, shall be re-enacted and published at length."

It is also claimed that the act requires unjust and unequal taxation; that it is unjust to maintain a special police force in a township at the expense of the whole county.

I do not think the section of the law under consideration is obnoxious to either of the provisions of the Constitution referred to. In the exercise of the police power of the State it is proper for the Legislature to divide the State into as many police districts as it may see fit, and to police them in such manner as it shall deem best, so long as the action taken is within the limitation of the Constitution; or it may adopt the existing political divisions of the State as such districts. The power of the Legislature in this respect is always sufficient to meet the necessities of the case, in the most reasonable manner, and the one least oppressive and offensive to the people, and having also some regard to economy in any system it may adopt.

The city of Detroit is within the county of Wayne, and contains three-quarters of all the population of the county. There are within the county eighteen outlying townships. The four named in the section of the act referred to are suburban to the city, and for the purposes of preserving the peace and good order may require policing as much as do the adjoining portions of the city. Although, as stated upon the argument, neither of these townships contains over 60 saloons, yet I think this number should be regarded as quite sufficient to engage the attention of the Legislature to the necessity of devising some means of preserving the peace in those townships; and I am not prepared to say those adopted in the law under consideration are not suitable for the purpose. It is certainly not for this Court to say whether it is the best system that could be devised, nor can there be any constitutional objection to making the entire county of Wayne a

police district, and to authorize the appointment of police officers, and direct their patrols, in the manner provided in this section.

It will not do to say that one of these local communities may be left at liberty to enforce proper police regulations, or those provided for the protection of peaceable quiet citizens in their homes and in their property therein from breaches of the peace and the vandalism of the law-breaker and the lawless, or not, as a majority of the voters shall determine, or if the officers elected shall fail to furnish the necessary protection. The State's duty to its citizens is imperative upon this subject, and that is to preserve the peace, health, life, morality, and property of its people, wherever they may be located within its borders, if it has to resort to all the power in the State for the purpose.

We are not informed of the necessity for furnishing additional police force to insure a proper observance of the law in these outlying townships, nor what is the disposition of the police officers of those townships in regard to the discharge of their duties in the premises. That is a matter with which this Court has no concern. It is a subject, however, which is peculiarly within the province of the Legislature to investigate, and upon which to act if any action is required. It would appear they have taken such action, from the thirty-third section of the act, which section reads as follows:

"That for the better enforcement of the provisions of this act in that portion of the county of Wayne which forms the suburbs to the city of Detroit, the jurisdiction of the board of metropolitan police of said city is hereby extended over the townships of Springwells, Greenfield, Hamtramck, and Grosse Point, in said county. And it shall be the duty of said board of metropolitan police to police said townships sufficiently strong to enable them to enforce the provisions of this act within the limits thereof, and for that purpose said board of metropolitan police are authorized to increase the police force under their control, to mount said increase, or

any portion thereof, and are vested with the same authority as is now conferred upon them within the corporate limits of the said city of Detroit, and may use all or any portion of the force under their control.    The police force so employed in said townships shall have and are hereby vested with the same powers to enforce the provisions of this act, and to preserve the peace, as is by general law conferred upon the constables therein.

"The expenses of maintaining such extra force of police in said townships shall be paid monthly by the county of Wayne out of the moneys paid into the treasury of said county under the provisions of this act, on duly certified vouchers therefor, prepared and submitted by said board of metropolitan police to the board of county auditors of said county, who are hereby directed to audit and pay the same in the same manner as other claims for services against the county of Wayne are audited and paid."

The facts upon which that action is based we cannot consider.   The only question before us is, had the Legislature power, under the Constitution, to take such action?

The law does no more than authorize the metropolitan police of Detroit to appoint policemen to patrol the townships for the purpose of enforcing obedience to the law.   No other or new power is conferred upon the metropolitan police.   The policemen appointed for this particular service do not derive their authority to act from the metropolitan police.   That is conferred upon them by the statute.   Neither does their authority interfere with the police officers of the township.   The policemen appointed are only an additional force to those of the township, and as the law itself says,—

"For the better enforcement of the provisions of this act in that portion of the county of Wayne which forms the suburbs to the city of Detroit."

And it will be noticed that no more men are to be appointed than are necessary for the purpose.   If the law is not violated, there will be no need of the services of the added policemen.   If the township force is sufficient to and does secure obedience to the law, then there will be no need

to use the added police force. The county is a police district, each township is another, and the city is another.

If in case the officers and people of either of the townships named shall fail for any reason to enforce the law, and thereby expose the peaceable citizens therein and their property to the lawless and violent, and it is necessary to bring outside force to bear upon them to preserve the peace, it is difficult to see how it can be better done than to take such force from the adjoining city. This is precisely what the Legislature has in this section of the act directed to be done, and .I have not yet discovered any provision in our Constitution violated by such legislative action.

There is nothing appearing in this record showing that the expenses of the additional force may not and ought not to be borne by the county, and, if so charged, that the levy of the same would produce unequal or unjust taxation. It is in this manner the law requires that burden to be borne, and I can see no constitutional objection to it. The act itself provides that half the fund arising from the liquor taxes shall be placed to the credit of the county. It is placed in the general fund, and it would be a strange ruling, indeed, that would preclude these outlying townships from sharing in that fund when they are seeking to apply it to the very purposes for which it was created.

The section we are considering limits the force that can be used to those "sufficient to enable them to enforce the provisions of the act within the limits" of the township, so that the power of these policemen to act, and the extent of that power, the territory in which they may act, and the particular law to be enforced by such action, are all specified in the law under consideration, and are not left to the exercise of power vested in the metropolitan police, nor to its discretion. In performing the duties required by the Legislature, no local constituted authorities in the towns or the divisions thereof, or their right to self-government, is inter-

fered with, and it is only when such local action is not taken, or, if taken, it is found insufficient, that the newly-appointed policemen can act at all.

The board of metropolitan police is a State institution. Its members are appointed by the Governor, by and with the advice and consent of the Senate, under the requirement of the act of the Legislature. It is not in any sense a governing body. It is simply invested with the power to put into execution the means provided by the Legislature to preserve the peace. It is the privilege and duty of a township under the Constitution to manage its own local affairs, as it is the county, its affairs, and to keep the peace; and when either fails to keep the peace, the obligation of the State begins at just that point to see to it that such means are used as will accomplish that object. This deprives the township of no rights, but simply aids it in protecting those for which it was created, and with which it was invested. As I have said, the duty, under our form of government, of preserving the peace, primarily rests upon the Legislature, and it does not divest itself of the discharge of that duty by intrusting its execution to the local authorities of a township elected for the management of the township's local affairs. Were this the fact, the Legislature would possess the power at any time of divesting itself of the ability to protect the State against disorder and violence.

I fully agree with my Brother CAMPBELL that, under our Constitution, there cannot be any such thing as a municipal government which is not managed by popular representatives and agencies deriving their authority from the inhabitants, and no business which is in its nature municipal can be controlled by State or any other outside authorities. But maintaining the peace is not in itself solely municipal. People outside the lines of a municipal corporation are interested in the prevention of crime and the maintenance of peace and good order therein, and the business of suppressing such

offenses against the State is not in its nature of a local character, and has never in this country been regarded as such.

I further agree with my Brother CAMPBELL that, while the local police officers necessary to constitute the requirement of the township cannot be superseded in the discharge of their ministerial duties, as is said in *Allor v. Wayne Co. Auditors*, 43 Mich. 76, the State may provide for other policemen to be auxiliary to them in keeping the peace; and that, under the metropolitan police law, the police force added to the police of the wards is no more than an "additional force of constables and watchmen" appointed by the State for certain limited purposes.

This has been held constitutional by this Court. See *Allor v. Wayne Co. Auditors, supra.*

The act in question, as I have shown, does nothing more for these townships than is done by the metropolitan police act for the several wards of Detroit, and I think both are clearly constitutional. *People v. Mahaney*, 13 Mich. 481; *Allor v. Wayne Co. Auditors*, 43 Id. 76 (4 N. W. Rep. 492); *People v. Draper*, 15 N. Y. 532; *Metropolitan Board v. Barrie*, 34 Id. 657; *People v. Shepard*, 36 Id. 285.

In construing constitutional provisions of our own State it must always be borne in mind that the Constitution is not a grant of power, but a limitation thereof; and that, in construing this section of the statute, we cannot ignore the fact that the police power is a sovereign State power which may be delegated and resumed at pleasure, as circumstances may require.

I think the *mandamus* should be granted.