WILLIAM BARRY v. JOHN E. TRAUX, CLERK OF THE DISTRICT COURT IN AND FOR THE COUNTY OF CAVALIER, IN THE STATE OF NORTH DAKOTA.

Opinion filed May 21, 1904.

**"The Right of Trial by Jury" Embraces All the Elements Known at the Adoption of the Constitution.**

1. "The right of trial by jury," which is secured to all by section 7 of the state constitution, includes all of the substantial elements of the trial by jury as they were known to and understood by the framers of the constitution and the people who adopted it.

**"The Right of Trial by Jury" as Fixed in the Constitution Is Subject to the Change of Place of Trial at the Instance of the State.**

2. The system of trial by jury in criminal cases, which existed in this jurisdiction for 14 years prior to the adoption of the constitution, gave the state, as well as the defendant, a right to have the place of trial changed from the county where the offense was committed to another county, when necessary to secure a fair and impartial trial, and it was the right thus known and understood which is secured by the constitution.

**The Common Law Right of Trial by Jury Was Subject to Such Change at the Instance of Either the Prosecution or Defense.**

3. At common law the right of trial by a jury of the county of the offense was a general one, not unconditional, but always subject to the exception that the indictment might be removed and the trial take place in another county, either upon the application of the prosecution or the defendant, when necessary to secure a fair and impartial trial.

**Statute Authorizing Change of Place of Trial in Criminal Cases Is Constitutional.**

4. Section 8122, Rev. Codes 1899, which provides for a change of place of trial to another county, upon the application of the state's attorney, when a fair and impartial trial cannot be had in the original county, merely perpetuates the right as it was known when the constitution was adopted, and also as it existed at common law, and does not violate the right of trial by jury as secured by section 7 of the state constitution.

Certiorari by William Barry against John E. Traux, clerk of the District Court for the county of Cavalier, to review an order granting a change of venue in a prosecution of plaintiff for murder. Writ denied.

*Josaph Cleary* and *Morrill & Engerud,* for plaintiff.

The right of trial by jury as guaranteed by the constitution is that recognized by the usage of the common law. Debates Constitutional Convention N. D., pp. 361, 362. State v. Bates, 43 L. R. A. 33 and notes; Harris v. People, 128 Ill. 585, 21 N. E. 563; Lommen v. Minneapolis & C. Co., 65 Minn. 196; Sovereign v. State, 4 Ohio St. 489; Clark v. Utica, 18 Barb. 451, 29 Am. Dec. 671; Watt v. People, 1 L. R. A. 403.

The elements of the common law right to a jury trial were, twelve lawful men, a unanimous verdict, a panel composed of men from the county where the offense was committed, and the right of challenge.

The term country side meant *the neighbors,* and eventually the county. 2 Pollock & Mairland's History of English Law, 621; 1 Chitty Crim. Law, 177; 3 Reeve's Eng. Law, 476.

The jury must be summoned from the vicinage where the crime is supposed to have been committed. Cooley on Constitutional Law (5th Ed.) 390; Bacon's Abr. "Juries," 308.

"Jury trial," "trial by jury of the vicinage," "trial by jury of the county or district" are synonymous terms. Watt v. People, 1 L. R. A. 403; Swart v. Kimball, 5 N. W. 635; Steamboat Co. v. Foster, 48 Am. Dec. 258; 12 Pl. & Pr., 289 and notes.

Where there is a constitutional guaranty of jury trial, the legislature cannot take away any of its attributes. 4 Enc. of Pl. & Pr. 378 and notes. Among these is a trial by a jury of the county; and the legislature cannot authorize a change of venue by the state. People v. Powell, 11 L. R. A. 75; State v. Knapp, 19 Pac. 728; Wheeler v. State, 24 Wis. 52; State v. Denton, 6 Cold (Tenn.) 539; Dongun v. State, 30 Ark. 41; Bramlett v. State, 31 Ala. 376; Ex parte v. River, 40 Ala. 712; State v. Arrison, Ohio, 20 Cin. Law Bulletin; State v. Albre, 61 N. H. 423, 60 Am. Rep. 325.

It make no difference that some constitutions contain the words "county or district;" they merely express in words what the term criminal jury trial *implies.* See Watt v. People, 1 L. R. A. 403; Swart v. Kimball, 5 N. W. 635.

"Vicinage," at the common law meant "the county." 1 Stubb's Constitutional History, 664; 1 Taylor's Origin & Growth of English Constitution, pp. 314-333.

Where a crime is committed near the county line, it is often provided that trial may be had in either county on the principle that it

does not deprive the defendant in a material degree of the benefits of a trial in the vicinage. State v. McCarty, 39 N. E. 1041; State v. Lowe, 45 Am. Rep. 570. While this has in some cases been held unconstitutional, we do not think a case can be found where the state is allowed a change of venue to a distant county.

*Geo. M. Price* and *E. R. Sinkler,* for defendant.

The constitutional provision involved is "the right of trial by jury shall be secured to all and remain inviolate, but a jury in civil cases in courts not of record may consist of less than twelve men, as may be prescribed by law." Sec. 7, Const. N. D. We first call attention to decisions of various states upon similar constitutions, and those more restrictive than the constitution of North Dakota.

In Minnesota the constitution contains the provision with the words "within the county or district wherein the crime shall have been committed," added to the usual provision. Notwithstanding this, that state has three times held that the right to try a defendant outside of the county where the crime was committed was constitutional. State v. Cut, 13 Minn. 341; State v. Robinson. 13 Minn. 453; State v. Miller, 15 Minn. 344.

The Iowa constitution has the usual clause without express restriction as to county or district. There a statute, providing that where a public offense is committed on the boundary of two or more counties or within five hundred yards thereof, the jurisdiction shall be in either county, was constitutional.

In Michigan, the constitution provides for trial by jury, and guarantees the right of such trial shall be inviolate, yet a statute providing for a change from one county to another at the instance of either party is unconstitutional. People v. Pittman, 52 N. W. 1039; People v. Furman, 61 N. W. 865; People v. Grossman, 61 N. W. 867.

Ohio upholds the right to change of venue on application of the state. State v. Meyers, 21 Weekly Law Bulletin, 57. Change of place of time with the state as moving party is upheld in New York. People v. Webb, 1 Hill, 179; People v. Vermilyea, 7 Cowan, 132; People v. Baker, 3 Parker Crim. Reports, 181; People v. Wright, 5 Howards Pr. 526.

In Texas the same is held. Cox v. State, 8 Texas Court of Appeals, 254; Ex parte Cox, 12 Texas Court of Appeals, 655; Friz-

zell v. State, 16 S. W. 751; Robinson v. State, 63 N. W. 869; Ben-hannon v. State, 14 Texas Appeals, 271; Cannon v. State, 56 S. W. 351.

The Wisconsin constitution contains the provision for a trial "by an impartial jury of the county or district," and under this statute it has been held in that state, that a change cannot be had upon the application of the prosecution. Wheeler v. State, 24 Wis. 52. But this case was practically overruled in State ex rel Brown v. Stewart, 19 N. W. 429, which held that a statute providing that a crime committed within 100 yards of the dividing line between two counties may be prosecuted in either county, was constitutional.

The constitution of Kentucky provides for "a speedy public trial by an impartial jury of the vicinage." A change of place of trial at the request of the state was upheld in Commonwealth v. David-son, 15 S. W. 53.

Florida has a constitution and statute practically the same as North Dakota's. A change of venue at the request of the state was upheld in Hewitt v. State, 30 So. 795.

The construction to be put upon a constitutional provision is to be determined from the laws existing prior to its adoption, and the history of such laws. People v. Harding, 51 Am. Rep. 95; 6 Am. & Eng. Enc. of Law, 930; Opinion of Justices, 41 N. H. 550.

When the people adopted section 7 of the constitution, declaring the right of trial by jury shall remain inviolate, they referred to jury trials as they were accustomed to it in territorial days and the words of the constitution mean that the right of trial by jury shall remain unimpaired as it was prior to the adoption of that in-strument. The courts will construe constitutional provisions to conform to the people's idea or understanding of it. State v. Pugs-ley 38 N. W. 498.

If it is contended that North Dakota adopted her code and consti-tution from California, and consequently with the construction there given them, it is sufficient to say, that the case of People v. Powell, 11 L. R. A. 75, wherein the construction of the provision was given, was not decided until 1891, two years after the adoption of our con-stitution. This case alone upholds the point striven for by plain-tiff, and it is decided upon a false assumption of what the common law was. The common law does not admit of a change of place

of trial at the request of the state. Bishop New Crim. Prac., section 75.

In England the applicant for a change of venue may be either the prosecutor or the defendant. Rex v. Penperass, 4 B. & Ad. 574; Rex v. Hunt, 3 B. & Ad. 444; Rex v. Holden, 5 B. & Ad. 347; Rex v. Harris, 3 Burr, 1330; Rex v. Nottingham, 4 East, 208.

YOUNG, C. J.   The plaintiff, a resident of Cavalier county, in the Seventh judicial district, is charged with the murder of one Andrew Mallem, which is alleged to have been committed in that county on January 3, 1901.   He was brought to trial in July, 1901, upon an information filed by the state's attorney of that county. The jury returned a verdict of guilty, and affixed life imprisonment as a penalty.   Upon appeal to this court the verdict was set aside and a new trial ordered.   State v. Barry, 11 N. D. 428, 92 N. W. 809.   At the second trial, which took place in November, 1903, the jury failed to agree upon a verdict.   Preliminary to the third trial, the state moved for a change of place of trial to another county, upon the ground that a fair and impartial jury could not be secured, or a fair and impartial trial had, in Cavalier county.   The motion was granted, against the plaintiff's objection, and on March 7, 1904, the presiding judge made an order transferring the case to Walsh county, which is an adjoining county in the same judicial district. The validity of this order is presented to this court for determination upon a writ of certiorari sued out by the accused, the plaintiff in the present proceeding.

The position of counsel for plaintiff is that the district court was without lawful authority to make the order in question, and that it is therefore void.   The order was made under the authority of section 8122, Rev. Codes 1899, which authorizes a change of place of trial in criminal cases upon the application of the state's attorney, and it is not claimed that the application by the state's attorney did not fully comply with the requirements of the statute.   The sole contention is that section 8122, supra, is unconstitutional.   Counsel for plaintiff contend that section 7 of the state constitution, which is a part of the Declaration of Rights, guarantees to every person in this state an unqualified right to a trial by a jury of the county where the offense was committed, and that neither the legislature nor the courts have power to deprive him of that right.   Section 7

of the constitution reads as follows: "The right of trial by jury shall be secured to all, and remain inviolate; but a jury in civil cases, in courts not of record, may consist of less than twelve men, as may be prescribed by law." The statutory provisions relating to change of venue in criminal cases are contained in article 5 of chapter 9 of the code of criminal procedure, embracing sections 8110 to 8122, inclusive, of the Revised Codes of 1899. The first section grants to a defendant the right to a change of place of trial when a fair and impartial trial cannot be had in the county or judicial district in which the action is pending, and specifies, as one of the grounds for a change, the impossibility of obtaining a jury that has not formed an opinion as to the guilt or innocence of the defendant such as would disqualify them as jurors. The several sections following this relate chiefly to matters of procedure. Section 8122, upon which this order is based, reads as follows: "The state's attorney, on behalf of the state, may also apply in a similar manner for a removal of the action, and the court being satisfied that it will promote the ends of justice, may order such removal upon the same terms and to the same extent as are provided in this article, and the proceedings on such removal shall be in all respects as above provided."

It is entirely clear that the constitutionality of the statute authorizing a change of the place of trial upon the application of the state turns upon the meaning to be ascribed to the phrase "right of trial by jury." What is the scope and extent of this right, which the Declaration of Rights secures to all and declares shall remain inviolate? Is it an unconditional right to a trial by a jury drawn from the county where the offense was committed, and prohibiting a change of place of trial to another county when a fair and impartial trial cannot be had in the county where the venue was originally laid? If it is true, as counsel for plaintiff contend, that "the right of trial by jury" thus guaranteed is an unqualified right to a trial by a jury of the county where the offense was committed, and that no person can, without his consent, be tried in any other county, it is apparent that no act of the legislature can deprive him of that right. Section 8122, Rev. Codes 1899, which confers the right to change the place of trial upon the state, would in that event be unconstitutional and void, and would furnish no legal justification for the order in question. If, on the other hand, the right to a trial by a jury of the county of the offense is conditioned upon the pos-

sibility of a fair and impartial trial in that county, it will be conceded that section 8122, supra, is constitutional and valid. The question involved is an important and delicate one; important, because it calls for a judicial declaration as to the scope of the most important of constitutional rights, the right of trial by jury; delicate, because it involves the consideration of an alleged infringement of that right by a co-ordinate branch of the government. Proper deference for legislative authority has given rise to the settled rule that all acts of the legislature will be presumed to be valid and constitutional, and courts will declare them void only when it is clear that they violate the fundamental law. In case of doubt, the presumption of validity will prevail and the law be sustained. When, however, the conflict is clear, the duty is cast upon the court to declare the conflict, and thus sustain the integrity of the constitution.

We are convinced that the legislation in question is constitutional and valid, and this conclusion does not rest upon the mere presumption of validity which attends all legislative acts. On the contrary, we think it is demonstrably clear that the "right of trial by jury" which is secured by the Declaration of Rights is in no respect impaired by the act of the legislature authorizing a change of place of trial to another county, upon the state's application, when a fair and impartial trial cannot be had in the original county. It will be noted that the constitution does not enumerate the details or incidents of the right of trial by jury. This omission, however, gives no authority to the legislature or to the courts to destroy by legislation or by judicial construction any of the substantial elements of the right of jury trial which were intended to be secured. The constitution refers to "the right of trial by jury" as a right well known and commonly understood at the time of its adoption, and it is the right so understood which is secured by it. Our duty in this case is therefore to ascertain whether it was the understanding of the framers of the constitution, and the people who adopted it, that the right of trial by jury included, as one of its substantial elements, an absolute right to a trial by a jury of the county where the offense was committed. If such was their intent it must be given effect, the same as though it had been expressly written into the constitution. We are unable, however, to find any ground whatever to sustain the existence of any such intent. On the contrary, there is, in our opinion, convincing evidence that the right of trial by jury, as that right was known at the time of the adoption of

the constitution, did not include an absolute right to a trial by a jury of the county where the offense was committed, but that the right was conditioned upon the possibility of a fair and impartial trial being had in that county. In other words, the right of trial by jury, as it now exists, with the right on the part of the state to secure a change of venue to another county when necessary for a fair and impartial trial, is the same as existed when the constitution was adopted. The present statutes regulating changes of venue in criminal cases, including section 8122, supra, were first enacted by the people of this jurisdiction in 1875, and they have been a part of the statutory law of this jurisdiction continuously since that date. See sections 285-291, Cr. Proc., Laws 1875, pp. 122, 123; also the same numbered sections of the code of criminal procedure, Rev. Codes 1877; also sections 7312 to 7318, inclusive, Comp. Laws 1887. The constitution was adopted in 1889. It will thus be seen that, for a period of fourteen years prior to its adoption, the people who adopted it had lived under a system of criminal laws created by themselves, which authorized the prosecution, as well as the defendant, to secure a change of place of trial to another county when necessary to a fair and impartial trial. The right, as it exists under the statute under consideration, is therefore the same as that which existed when the constitution was adopted, and for fourteen years prior thereto. The supreme court of Iowa held, upon a similar state of facts, that a like provision in the constitution of that state did not prohibit legislation authorizing a change of place of trial by the state. In that case it was contended that the trial jury must come from the county where the offense was committed. In denying this, the court said: "The first constitution in this state was adopted in 1846, and it contained the following provision: 'The right of trial by jury shall remain inviolate, but the general assembly may authorize trial by jury of a less number than twelve men in inferior courts.' This constitution was superseded by the one now in force, which was adopted in 1857, and it contains, in substance, the same provision. A statute precisely the same as section 4160 of the code was in force when the first constitution was adopted, and such a statute has been in force at all times since 1843. This being so, the right of trial by jury is the same now as it was when the first constitution was adopted, and therefore the statute in question is not unconstitutional, for the reason that the constitutional rights of the defendant have not been in any respect impaired." State v.

Pugsley, 75 Iowa, 742, 38 N. W. 498. This conclusion necessarily follows from an application of the well-settled rule of construction which requires that "a constitution shall be held to be prepared and adopted in reference to existing statutory laws, upon the provisions of which in detail it must depend to be set in practical operation" (People v. Potter, 47 N. Y. 375; People v. Draper, 15 N. Y. 537; Cass v. Dillon, 2 Ohio St. 607; People v. Mayor, 25 Wend. 22), and the further rule that courts are bound to presume that the people adopting a constitution are familiar with the previous and existing laws upon the subjects to which its provisions relate, and upon which they express their judgment and opinion in its adoption (Mayor v. State, 15 Md. 376, 480, 74 Am. Dec. 572; State v. Mace, 5 Md. 337; Bandel v. Isaac, 13 Md. 202; Manly v. State, 7 Md. 135; Hamilton v. County, 15 Mo. 5; People ex rel. Kennedy v. Gies, 25 Mich. 82; Servis v. Beatty, 32 Miss. 52; Pope v. Phifer, 50 Tenn. 686; People v. Harding, 53 Mich. 48, 18 N. W. 555, 51 Am. Rep. 95; Creve Cœur Lake Ice Co. v. Tamm [Mo.] 39 S. W. 791). The fact that the constitution secures "the right of trial by jury" by simply declaring it, without adding words expressly limiting the locality of a trial jury, is significant, too, of an intent to merely perpetuate the right as it then existed and was known to the people who gave to. the constitution their approbation. Further evidence of this intent is also found in the fact that the statutes relating to a change of place of trial, theretofore in force, were perpetuated upon the recommendation of the two code commissions which were composed of men learned in the law and familiar with the previous legislation of the state. One of the members of the first commission, and its secretary, were members of the constitutional convention. As a contemporaneous construction, this is entitled to great weight. Cooley on Const. Lim. (7th Ed.) 102. See, also, Mayor v. State and People v. Mayor, supra; also People v. Supervisors, 100 Ill. 495.

Counsel for plaintiff contend that the right to a trial by a jury of the county where the offense was committed was one of the essential elements of the common-law right of trial by jury, and that the right secured by the constitution must be held to be that recognized by the usage of the common law of England. It is undoubtedly true that the common law may be, and is, properly resorted to as an aid in construction, and, in the absence of other evidence of intent, it might be presumed that it was the intent of the framers of

the constitution to perpetuate the right of trial by jury as it existed at common law.   But it is a cardinal rule of construction that a constitution must be so construed as to give effect to the intention of the people who adopted it, and, while it will be construed with reference to the doctrines of the common law, its intent never will be overruled by them.   Black on Const. Law, sections 38 and 42; Cooley on Const. Lim. (7th Ed.) 94; Flavell's Case, 8 Watts & S. 197.   In short, the question is always one of intent, and, where the intent is clear, it, and not the doctrines of the common law, will prevail.   A similar contention was advanced in the case of The Huntress, Fed. Cas. No. 6,914, 2 Ware, 89, 4 West. Law J. 38, 24 Am. J. 486, involving the meaning of the words "admiralty" and "maritime," as those words are used in the third article of the constitution of the United States, which extends the judicial powers to "all cases of admiralty and maritime jurisdiction."   It was held in that case that the words were used in the sense which they had in this country at the time of the adoption of the constitution, and that where technical terms of law or jurisprudence are used in the constitution, which are common to our own law and to the law of England, if there is a difference of signification in the two countries, the meaning which they have in our own country is to be preferred. We fully approve the principle of interpretation laid down in that case in the following language:   "The assumption is, and it is made without a tittle of proof, unless general argument is to be taken as proof, that the framers of the constitution, silently, and without the slightest notice, referred, for the sense of these words, not to the meaning which they had in our jurisprudence, but to that which they bore in the jurisprudence and laws of England.   If the fact be so, we will venture to affirm that it is a fact unique in the history of the world.   It may safely be said that no man and no other body of men engaged in framing an organic law for the government of a great nation ever, silently and without notice of any such intention, referred, for the sense and meaning of any of their words, to the signification which they had in laws and jurisprudence of a foreign nation, especially if these words had a well-known meaning in their own country.   We may here be met by an argument that the constitution does, in fact, refer to the common law for the definition of words, by the use of technical terms of that law, as 'habeas corpus,' 'trial by jury,' etc., without proceeding to define them.   But these words were just as familiar in our law as in that of England.

And if, by supposition, there had been any difference in the sense
in which they were used in the English statutes and common law
and that in which they were generally used and understood in this
country, can there be a doubt which sense is adopted by the consti-
tution? The common law, and, of course, the sense in which the
technical words of that law are used, was never in force in this
country any further than as it was adopted by common consent or
by the colonial legislatures. Beyond this, it was as much a foreign
law as that of France or Holland; and, for the definition of any
technical terms of general law or jurisprudence, we may with just
as much propriety refer to the laws of any other foreign country
as to those of England, except so far as the law of England has
been adopted and incorporated into our own laws and jurisprudence.
And where the same words have a different import in the two coun-
tries, that which prevails in our own is most certainly to be pre-
ferred." It is entirely clear, therefore, that the right of trial by
jury which is secured by the constitution is the right of trial by
jury with which the people who adopted it were familiar, and that
was the right which had obtained a fixed meaning in the criminal
jurisprudence of the territory, as defined by the statutes which ex-
isted prior to and at the time of the adoption of the constitution.
That right, as we have seen, gave to the prosecution, as well as the
defendant, the right to change the place of trial when necessary
to secure a fair and impartial trial. The present law is in no re-
spect different, and is therefore not vulnerable to the constitutional
objection urged against it.

In reaching the conclusion just announced, we have assumed the
correctness of the contention that at common law the prosecution
had no right to change the venue, but that, on the contrary, it was
the defendant's unqualified right to demand a jury panel from the
county where the offense was committed. We do not think, how-
ever, that this contention accords with the fact. We are of opinion
that neither the common law as it existed in England at the time
of the Revolution, nor as adopted in this country, gave the defend-
ant an absolute right to a trial in the county of the offense. This
is, at least, the opinion of a large number of American courts, whose
views are entitled to most respectful consideration, and, as we shall
hereafter see, it is sustained by English cases and text writers.
In New York, from an early day, it was the custom to award a
change of place of trial to the prosecution. In People v. Vermilyea,

7 Cow. 137 (1827), it was said that: "The course in criminal prosecutions, where a clear case is made out, is to order a suggestion upon the record that a fair and impartial trial cannot be had in the county where the offense is laid. A venire is then awarded to the sheriff of another county, and the cause is tried there, the indictment remaining unaltered as to the venue." In People v. Webb (1841), 1 Hill. 179, the venue was changed in a criminal case, upon application of the public prosecutor, upon the ground that a fair and impartial trial could not be had in the county where the indictment was found. The court said: "The revised statutes impliedly authorize us to make such a change for special cause on an indictment coming into this court on certiorari. This is also an authority which we have at common law"—citing 1 Chitty on Crim. Law 201; King v. Notingham, 4 East. 208.; People v. Vermilyea, supra. In People v. Baker (1856), 3 Abb. Prac. 42, a murder case, it was urged that the writ of certiorari could not lawfully issue upon the application of the prosecution to remove an indictment to another county. This was denied, and the court stated that, "There can be no doubt that it has always been competent for counsel for the Crown in England, and, since our Revolution, for the counsel for the people of the state (unless abrogated by statute), to remove criminal cases * * * by certiorari," and, after an exhaustive review of the authorities, held that a change may be ordered upon the application of the prosecution as well as the defendant, when made upon the ground that a fair and impartial trial cannot be had in the original county. In Price v. State (1849), 8 Gill. 296, which was a murder case removed to another county, upon the application of the attorney general, for the purpose of securing a fair and impartial trial, it was contended that this was a violation of the common-law right of trial by jury guaranteed by the Maryland constitution. This was denied. The court said: "That the court of king's bench has rightfully exercised this power of removal as an acknowledged, if not essential, part of its ordinary common-law jurisdiction, both in respect to criminal and civil cases, does not seem to have been doubted in any cases in which its exercise is reported to us, of which several may be found referred to in 1st Chitty's Criminal Laws, 201. It is there said that 'At common law the court has power of directing the trial to take place in the next adjoining county when justice requires it.' * * * The same considerations must govern, and the same result be obtained, in regard

to the state and the party. There is no canon of interpretation which can be applied to the one which will not with equal force apply to the other.". In Negro Jerry v. Townshend (1852), 2 Md. 274, it was said that: "All laws for the removal of causes from one vicinage to another were passed for the purpose of promoting the ends of justice by getting rid of the influence of some local prejudice which might be supposed to operate detrimentally to the interests or rights of one or the other of the parties to the suit. This is a common-law right belonging to our courts, and, as such, can be exercised by them in all cases, when not modified or controlled by our constitutional or statutory enactments"—citing Price v. State, supra. The cases last cited were approved in Cooke v. Cooke, 41 Md. 362. The supreme court of Pennsylvania, in Commonwealth v. Balph, 111 Pa. 365, 3 Atl. 220, after pointing out that its jurisdiction was similar to that of the king's bench, and reviewing the English and American authorities upon this question, stated that: "After a case has been so brought into the king's bench, it may be tried at bar, or at nisi prius by a jury from the county from which the record was brought, or, if it is suggested upon the record and proved by an affidavit that an impartial trial cannot be had in such county, the record may be remanded to another county for trial. The latter is an important provision, as it amounts practically to a change of venue, and may take place in cases when no such change is given by statute"—and reached the conclusion that it "possessed the inherent power of issuing writs of certiorari to remove criminal cases, to try such cases at bar in any district in which it might be sitting, or send it for trial to nisi prius, or, upon sufficient cause shown, to send it to a county other than the one in which the indictment was found." See, also, Commonwealth v. Delamater, 145 Pa. 210, 22 Atl. 1098, and Kendrick v. State, 2 Tenn. (Cooke) 474, and cases cited. The same view is held in Michigan. The constitution of that state provides that: "The right of trial by jury shall remain. * * *" In Swart v. Kimball, 43 Mich. 443, 5 N. W. 635, a statute which authorized the indictment and trial of trespassers upon state lands, in any county in the Upper Peninsula, was held unconstitutional, for the reason that it violated the right of trial by a jury of the vicinage as known at the common law—a right which was held in that case, as it is, indeed, in all cases, to be one of the substantial and beneficial elements of a jury trial. The case did not involve the question as to whether the right is unquali-

fied, or the right of the state to secure a change when necessary for a fair and impartial trial. Nevertheless, Mr. Justice Cooley, who wrote the opinion, indicated his views on that subject in the following language: "It has been doubted in some states whether it was competent even to permit a change of venue, on the application of the state, to escape local passion, prejudice and interest. Kirk v. State, 1 Cold. 344; Osborn v. State, 24 Ark. 629; Wheeler v. State, 24 Wis. 52. But this may be pressing the principle too far. State v. Robinson, 14 Minn. 447 (Gil. 333); Gut v. Minnesota, 9 Wall. 35, 19 L. Ed. 573." The significance of the statement, "this may be pressing the principle too far," will be better understood when we consider that the constitution of Tennessee guarantees a trial by "an impartial jury of the county in which the crime shall have been committed;" that of Arkansas and Wisconsin "an impartial jury of the county or district * * *;" and that it was under these express constitutional limitations as to locality that the courts were constrained to hold, in the cases referred to by Judge Cooley, that the right to a trial by a jury of the county or district was an absolute one. In the later case of People v. Peterson, 52 N. W. 1039, 93 Mich. 27, where the question was directly involved, that court held a statute authorizing a change of place of trial upon the state's application was constitutional, and, after quoting the above language of Judge Cooley, said: "This statute is but declaratory of the common-law power vested in the circuit court of this state. It is said by Bishop, in his work on Criminal Procedure, that the change of venue is usually ordered on application of the prisoner, first giving notice to the prosecuting officer, and then supporting the application by affidavits; but it may equally be ordered, in the absence of any provision of written law to the contrary, when applied for by the representative of the government. 1 Bish. Crim. Proc., section 113. In support of this doctrine is cited People v. Webb, 1 Hill. 179; People v. Baker, 3 Parker, Cr. R. 181. In People v. Webb, supra, it was held that a change of venue might be awarded by the court on application of the state, on motion of the public prosecutor, if it appear that a fair and impartial trial could not be had in the county where the indictment was found. We think it is well settled that, where there is no constitutional provision fixing the vicinage within which the trial must be had, the rule of the common law must prevail, unless changed by statute, and that under their common-law powers the

circuit courts have the right, upon cause shown, to change the venue upon the application of the people." This case was followed and approved in People v. Fuhrmann, 103 Mich. 593, 61 N. W. 865.

Numerous cases might be cited which, under the supposed coercion of constitutional provisions providing for a trial by a jury "of the county," or "of the county and district," or "of the vicinage," hold that the legislature cannot authorize a change by the state, even when necessary to secure a fair and impartial trial. But, even under such constitutional restrictions, the cases are not uniform. The constitution of Minnesota guarantees "a speedy and public trial by an impartial jury of the county or district where the crime shall have been committed." It was held in State v. Miller, 15 Minn. 344 (Gil. 277), that a statute authorizing a change by the state from a county in one judicial district to an adjoining county in an adjoining district was not unconstitutional. The court said, "that both constitution and law are but the affirmance of the common-law right of the defendant to an impartial jury of the county where the act was committed, subject to the right of the court to change the place of trial whenever such impartial jury cannot be had there." Commonwealth v. Davidson, 91 Ky. 162, 15 S. W. 53, is to the same effect. The correctness of the declarations as to the common-law right in the cases to which we have referred is, we think, fully sustained by the English cases and text-writers. In England the king's bench had general supervisory jurisdiction, in criminal cases, coextensive with the kingdom, and a change of the place of trial from the county of the offense in criminal cases was effected by aid of a writ of certiorari issued by that court. In 4 Blackstone, 321, the second of the four grounds upon which that writ was frequently issued is stated as follows: (2) "Where it is surmised that a partial or insufficient trial will probably be had in the court below, the indictment is removed in order to have the prisoner or defendant tried at the bar of the court of king's bench, or before the justice of nisi prius * * *." And in the same connection that learned author states that "a certiorari may be granted at the instance of either the prosecutor or the defendant, the former as a matter of right, the latter as a matter of discretion." See, also, 2 Hawkins' Pleas of Crown, c. 27, section 27. Were authority necessary to sustain the foregoing text, it will be found in the following cases: Rex v. Holden, 5 B. & Ad. 346, 2 N. & M. 167; Rex v. Thomas, 4 M. & S. 442; Rex v. Russel, 4 B. & Ad. 576; Rex v. Ellis, 6 B.

& C. 145; Reg. v. Palmer, 5 El. & B. 1024; Rex. v. Penprose, 4 B. & Ad. 252; Reg. v. Fay, Ir. R. 6 C. L. 436; Rex v Hunt, 3 B. & Ald. 444, 2 Chit. 130; Rex v. Eaton (1787), 2 T. R. 81, 1 R. R. 436; In re Lord Lustowit's Fishery, 9 Ir. R. C. L. 46; Reg. v. Barrett, Ir. R. 4 C. L. 285, 18 W. R. 671; Reg. v. Phelan, 14 Cox, C. C. 579. It will appear from an examination of these cases that the writ was granted as of course when applied for by the crown or the attorney general, and that no distinction was made between misdemeanors and felonies, except that in case of a felony the showing by a defendant that a fair and impartial trial could not be had must be more conclusive than in case of a mere misdemeanor. So firmly was the crown's right to the writ established at common law, that acts of parliament which took away the right to the writ in general language were held not to apply to the crown because it was not expressly so stated. Rex v. Bodenham, 9 Ad. & El. 504; Rex v. Bodenham, 1 Cowp. 78; Rex v. ———, 2 Chit. 135; Rex v. Davies (1794), 7 T. R. 626, 5 Eng. R. Cas. 543. It is true that most of the reported cases on this subject are where the application was by the defendant. The reason for this is found in the fact that the crown's right was an admitted one, whereas that of the defendant rested upon an exercise of the court's discretion; and the latter was therefore most frequently the subject of judicial inquiry. The crown's right was seldom, if ever, challenged, and no case has been cited or found by us where it was denied. It was exercised upon the application of the prosecution in Reg. v. Barrett, supra, where: "On a trial for felony the jury was not able to agree upon a verdict, and the prisoner was discharged. The crown then moved to have a second trial in some other county, on the ground that a fair trial could not be had in the county where the offense was committed. It was held that the court of queen's bench had the same jurisdiction to change the place of trial in felony as in misdemeanor, and that the place of trial should be changed, as the court was of opinion that a fair trial could not be had in the county where the offense was committed." So, also, in Reg. v. Phalen, supra: "In an indictment for murder the trial had twice been ready for hearing; once in the local venue where the alleged crime was committed, and once in the venue fixed by the winter assizes act. On both these occasions the trial was postponed on the ground that an impartial trial could not be had, it appearing on affidavit that large numbers of the jurors who would try the case were members of an association

called 'The Land League,' which association had subscribed to the defense of the prisoners, the crime being of an agrarian nature. The venue was now changed from the local one to a district where it appeared probable that a fair and impartial trial could be had, the crown being put under terms to expedite the hearing of the case, and to pay the costs to the accused persons necessarily incurred by the change of venue." So, too, the place of trial was changed upon the crown's application in a case reported in 2 Chitty, 235. In Reg. v. Palmer, supra, the defendant was tried for murder, convicted and executed in another county than that of the offense. It is true that in that case the indictments—for there were several of them—were removed to king's bench upon a writ issued upon the defendant's application, but the record shows that the motion which fixed the place of trial was made by the attorney general. Lord Campbell, C. J., said: "No doubt, after the indictment has been removed, there may be a trial at bar, though at present I see no ground for that; or there may be a trial in any county of England in which the court may think it right that such a trial should take place." And the other justices separately expressed their assent to this view. Blackstone, cited to sustain the unqualified character of the right of trial by a jury of the vicinage, does not support that view, but rather the reverse. True, in book 4, p. 351, he says: "When, therefore, a prisoner on his arraignment has pleaded not guilty, and for his trial hath put himself upon the country, which country the jury are, the sheriff of the county must return a panel of jurors liberos et legales homines de vicineto—that is, freeholders, without just exception—and of the vicinity or neighborhood, which is interpreted to be the county where the fact is committed." And, again, he states that a grand jury "cannot regularly inquire of a fact done out of that county for which they are sworn." But these are statements of general, and not absolute, rules. Indeed, in this connection, on page 304, he cites a large number of offenses, including murder, which, under various and early acts of parliament, might be inquired of and tried in any county of the kingdom, and concludes, "But, in general, all offenses must be inquired into, as well as tried, in the county where the fact is committed." Reference has already been made to his enumeration of the impossibility of a fair and impartial trial in the county of the offense as one of the four grounds for the issuance of the writ of certiorari, and that the right to the writ, when applied for by the crown, was absolute.

Further, confirmation is found in his eulogy upon the jury system. Volume 3, p. 385. After stating that "the locality of trial required by the common law" was a result of the ancient locality of jurisdiction, namely, in the manor and the hundred, and gradually in the country, which formerly made it necessary that the jurors should be tenants of the lord or members of the hundred where the offense was committed, he said: "The restriction as to the hundredors hath gradually worn away and at length entirely vanished. That of counties still remains for many beneficial purposes. But, as the king's courts have a jurisdiction coextensive with the kingdom, there surely can be no impropriety in sometimes departing from the general rule when the great ends of justice warrant and require an exception." Our conclusion, that at common law the right of trial by a jury of the county of the offense was a general one, not unconditional, but always subject to the exception that the indictment might be removed and the trial take place in another county, either upon the application of the prosecution or the defendant, when necessary to secure a fair and impartial trial, and without substantial difference between felonies and misdemeanors, except as to the degree of proof necessary to procure the change, is also supported by the text of other distinguished English authors whose common-law learning vouches for the accuracy of their statements. See 1 Chitty, Crim. Law, 378, 495; 2 Hale's Pleas of the Crown, 162, 210; 1 Roscoe, Crim. Evi. (8th Ed.), 290, 372, and cases cited.

The supreme court of California held in People v. Powell, 87 Cal. 348, 25 Pac. 481, 11 L. R. A. 75, that a constitutional provision identical in language with our own—and it is upon this case that counsel for plaintiff chiefly rely—prohibited the legislature from authorizing a change of place of trial to another county upon the state's application. We cannot agree to the correctness of this decision. Its fallacy lies in erroneously assuming that at common law the defendant had an unqualified right to a trial by a jury of the county of the offense. The people of California, when they adopted their first constitution, did not enter into statehood from a territorial government, like the people of this state. In the absence of any other certain means of ascertaining the nature of the right of trial by jury intended to be secured by their constitution, the court turned to the common law, and, assuming that the common-law right was an unqualified one, necessarily reached the conclusion that the legislature could not take it away. The error lies in the assumption.

The crowning purpose of the jury system, through its various stages of development, has been to provide a fair and impartial trial. Under the interpretation of the California court, the right secured is not the common-law right of trial by jury. It is more. It secures to the defendant a fair and impartial trial in the county of the offense, if such a trial can be had; and, if not, it grants him immunity from trial and punishment for his offense. The common law, which may be said to be the ripened product of the wisdom and experience of successive generations, is not properly chargeable with the origin of any such doctrine. The Crown, through the king's bench, always had the power to accord a fair and impartial trial. If it could not be had in the county where the offense was committed, it was secured by transferring the indictment for trial to another county. Our constitution was adopted after, and not in the light of, the California case, and is not therefore controlled by it. As we have seen, the right of trial by jury had acquired a fixed meaning among the people who adopted our constitution when they adopted it, and it is the right thus understood which was secured, and it is, in fact, merely the right as it existed at the common law.

It follows from what we have said that the district court did not act without lawful authority in making the order in question. The writ will therefore be quashed. All concur.

COCHRANE, J., did not sit in the above case or take any part in the decision, Judge CHARLES A. POLLOCK, of the Third judicial district, sitting in his place by request.