(123 N. W. 667.)

---

The State of North Dakota vs. W. H. Winchester and District Court of the Sixth Judicial District and Hon. W. H. Winchester, Judge Thereof.

Opinion filed November 5, 1909.

**Change of Venue — Discretion of Court — Application by Attorney General.**

1. Construing section 9931 of the Revised Codes of 1905, which provides, in substance, that the state's attorney, on behalf of the state, may apply for a removal of a criminal action, and the court, being satisfied that it will promote the ends of justice, may order such removal, *held,* that the granting or denying of an application duly made by the Attorney General for a change of the place of trial of a criminal action on the ground that an impartial trial cannot be had in the county where the action is pending, is a matter within the sound discretion of the court to which the application is made, and its ruling will not be disturbed except for an abuse of discretion.

**Jury — Challenge of Panel — Change of Venue.**

> 2. The fact that the defendant as sheriff subpoenaed the jury might be sufficient cause for a challenge to the panel, but is not cause for a change of venue.

**Criminal Law — Change of Venue — Abuse of Discretion.**

> 3. Upon the showing in this case this court is not prepared to say that there was an abuse of discretion in denying the motion of the Attorney General for a change of venue.

Original application by the State of North Dakota for a writ of certiorari to the District Court of the Sixth Judicial District and the Hon. W. H. Winchester, Judge thereof.

Writ denied.

*Andrew Miller, Attorney General,* for the State. *Newton & Dullam,* for the Respondent.

CARMODY, J. This is an application for an original writ of certiorari on behalf of the state, the plaintiff, in State v. Duncan J. McGillis. On the return day both parties appeared by counsel, submitted their arguments, and stipulated that the case might be disposed of on its merits on the moving papers of the Attorney General and the return of the respondent.

On June 1, 1909, the Attorney General filed an information in the district court of Burleigh county charging Duncan J. Mc-Gillis with the crime of knowingly permitting a building owned by him to be used for the purpose of unlawful dealing in intoxicating liquors in violation of law. On the same day he pleaded not guilty to said information. On June 3d the state, by the Attorney General, filed in said district Court a motion for an order changing the place of trial of said action. The motion was based upon the affidavit of the Attorney General, which alleged, in substance that in his opinion the state could not have a fair and impartial trial in Burleigh county. That the people of said county were so prejudiced against the prosecution and conviction of offenders against the various statutes of this state prohibiting the illegal sale of intoxicating liquors and unlawful use of buildings for such purpose that said laws have ever since their enactment been openly and notoriously violated by numerous and divers persons in the City of Bismarck and various parts of the county with the knowledge and tacit approval of the people generally and of the peace officers,

and that attempts to punish offenders against such laws have generally been met with determined resistance and refusals to convict or indict without regard to the evidence furnished by the prosecution, and that at this term of court one Bartheau on his third trial for violation of the prohibition law was acquitted. That the defendant in this case is the duly elected, qualified, and acting sheriff of this county, and as such sheriff, by himself and his deputies, subpœnaed the present jury, and as such sheriff, through himself and his deputies, has charge of such jury. That, in addition to being sheriff, he is an active politician, and one James Myers, who is now under arrest for violation of the prohibition law, was at the time of his arrest a tenant of the defendant herein in the defendant's building described in the information. That another defendant, Joseph Higgins, who was arrested at the same time, charged with keeping a common nuisance, was a tenant of one E. G. Patterson. That said E. G. Patterson for many years has been a prominent politician in this county, and is now chairman of the board of county commissioners. That said E. G. Patterson and the defendant McGillis up to this date and for many years last past have been at all times directly or indirectly interested in places where intoxicating liquors have been sold in violation of law, or directly engaged in the sale of intoxicating liquors in violation of law, and for many years have been the leading influence in this county that has made possible the prevention of the enforcement of the prohibition law, as affiant is informed and verily believes, and that the prestige of said E. G. Patterson, and of the said Duncan J. McGillis, when combined, is so great that affiant believes that a jury cannot be had in the county that would give the state a fair trial in the case of the State of North Dakota against Duncan J. McGillis. That while said motion for a change of the place of trial was still pending and undetermined, and on June 4, 1909, the Attorney General made a motion and requested the respondent to call in a judge of another district court of this state to preside at the trial of said action. On June 10th the respondent denied the motion of the State for a change of the place of trial, and requested the Honorable W. C. Crawford, Judge of the Tenth Judicial District to preside at the trial of said action in Burleigh county. Thereafter, on June 11, the state, through the Attorney General, setting forth the facts and proceedings above stated, procured an order

from a judge of this court commanding the respondent to show cause before this court on June 15, 1909, why an appropriate writ should not issue requiring and commanding him to transmit to this court all pleadings, orders, affidavits and records herein and the records of the proceedings had in said criminal action entitled, "The State of North Dakota v. Duncan J. McGillis," to the end that this court may review the rulings thus made. On the return day a verified answer to the order to show cause was filed on behalf of the respondent, which states the reasons for his action, in substance, as follows: Admits the filing of the information against Duncan J. McGillis, his plea of not guilty, the motion for the change of the place of trial of the action of the State of North Dakota against said Duncan J. McGillis. That the Attorney General made the affidavit mentioned in his application for the order to show cause which was used in support of the motion for a change of the place of trial; the application of the state to have respondent call in another judge to preside at the trial of said action. That he called in the Honorable W. C. Crawford, Judge of the Tenth Judicial District. That Duncan J. McGillis, defendant in said criminal action, filed his own affidavit, the affidavits of E. G. Patterson, G. F. Dullam one of the attorneys for the defendant, and of some thirty or more persons resident within Burleigh county and the city of Bismarck. On behalf of said defendant the affidavits admitted that said Duncan J. McGillis, the defendant, is sheriff of Burleigh county, and that E. G. Patterson is chairman of the board of county commissioners. That defendant, by himself and his deputies, subpœnaed the present jury, and by himself and his deputies has charge of such jury, and denied, in substance, all the other allegations in the affidavit of the Attorney General, and stated that in the opinion of each the state could have a fair and impartial trial of the action of the state against Duncan J. McGillis in Burleigh county. That in view of all the affidavits mentioned, and in consideration thereof, the said respondent then and there became and was convinced that no cause existed sufficient to move the discretion of said court or to justify the removal of the action against said Duncan J. McGillis from said Burleigh county to some other county for trial, either within or without the Sixth Judicial District, and he therefore denied the motion of the Attorney General to change the place of trial in said action.

It is, and has been, the universal practice of this court on the return of an order to show cause to pass upon the merits on all applications for original writs where the parties stipulate that this may be done, and also stipulate that the facts are as set forth in the moving papers and the respondent's return. Such stipulations were made in this case.

There are two questions involved in this case: · One, whether Sec. 9931 of the Revised Codes of 1905 is mandatory. Said section reads as follows: "The state's attorney, on behalf of the state, may also apply in a similar manner for a removal of the action, and the court, being satisfied that it will promote the ends of justice, may order such removal upon the same terms and to the same extent as are provided in this article, and the proceedings on such removal shall be in all respects as above provided." The other whether the facts presented show that the respondent abused his discretion in refusing to grant the motion for a change of the place of trial. We are convinced that Section 9931, supra, is not mandatory, and that the state is not as a matter of right entitled to a change of the place of trial in a criminal action. In State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686, this court, speaking through Judge Corliss, says: "The question whether a fair and impartial trial cannot be had in the county in which the action is triable must be settled by the judge. It must be made to appear to his satisfaction by affidavit that a fair and impartial trial cannot be had in that county. Having no interest in the question, the law very properly leaves it to him for a decision." In this case, as in any other case before an appellate court, we cannot go outside of the record and assume the possible existance of other facts than those disclosed by the record in order to sustain or reverse the decision under review. The granting or denying of an application duly made for a change of the place of trial of an action on the ground that an impartial trial cannot be had in the county where the action is pending is a matter within the sound discretion of the court to which the application is made, and its ruling will not be disturbed except for an abuse of discretion. Ross v. Hanchett, 52 Wis. 491, 9 N. W. 624; Giese v. Schultz, 60 Wis. 449, 19 N. W. 447; State v. Hall, 16 S. D. 6, 91 N. W. 325, 65 L. R. A. 151; Territory v. Egan, 3 Dak. 119, 13 N. W. 568; People v Webb, 1 Hill (N. Y.) 179; People v. Baker, 3 Abb. Prac. (N. Y.) 42; Commonwealth v. Balph, 111 Pa. 365, 3 Atl. 220; Com-

monwealth v. Delamater, 145 Pa. 210, 22 Atl. 1098; People v. Peterson, 93 Mich. 27, 52 N. W. 1039; People v. Fuhrmann, 103 Mich. 593, 61 N. W. 865; People v. Vermilyea, 7 Cow. (N. Y.) 137.

In People v. Baker, supra, the court says: "There are many palpable reasons why trials in criminal cases should ordinarily be had in the counties where the transactions which gave rise to them occurred, and a change should not be made except for forcible and clearly established causes." In People v. Peterson, supra, the court says: "It cannot be said but that the question rested within the sound discretion of the trial court to judge and determine the sufficiency of this showing for a change of venue." The Attorney General made a very strong showing in behalf of the state, yet we cannot say, after a careful review of his affidavit and the return of the respondent, that the district court abused its discretion in denying the motion of the state to change the place of trial.

The fact that the defendant, as sheriff, by himself and his deputies, subpœnaed the jury, might be sufficient cause for a challenge to the panel, but is not cause for a change of venue. It follows, therefore, that the application for the writ must be denied and the temporary restraining order dissolved, and it is so ordered.

MORGAN, C. J., and FISK. J.. concur. SPALDING and ELLSWORTH, JJ., dissent.

SPALDING, J. (dissenting). On a somewhat superficial examination of the record and the questions involved in this application, I was disposed to concur in the majority opinion, but, after giving it more careful attention, I am unable to do so. The record before us contains in full the motion papers, including the affidavit supporting the application of the Attorney General for a change of the place of trial used in the district court, and it is conceded in the majority opinion that that official made a strong case. It is at least customary to include in or annex to the return a copy of the record made in the lower court. This was not done in this instance. It is unnecessary to consider whether the omission in itself is fatal to the respondent's case, because it was stipulated on the hearing in this court that we might consider and decide the application for the writ upon the papers before us. The original record, including the affidavits submitted to the district court by the respondent, cannot be considered, because, as indicated, they are not

contained in the record.   The Attorney General having made out a case, we are limited in determining whether the judge of the district court legally exercised his discretion in denying the application to a consideration of the competent and material statements in the return.   The Attorney General charged that he had good reason to believe, and did believe, that the state could not have a fair and impartial trial of said action in Burleigh county.   Among the reasons given for the statement were that the people of the county were so prejudiced against the prosecution and conviction of persons for offenses against the various statutes prohibiting illegal traffic in and sale of intoxicating liquors, and the unlawful use of buildings for such purposes, and permitting buildings and premises to be used therefor, that it was common knowledge and the commonly expressed opinion of the people of the county that the state could not, in Burleigh county, obtain a fair trial for the crime charged, or in any case where the crime charged was the violation of the prohibition law; that the laws of the state on that subject and the maintenance of premises for such unlawful use and of knowingly permitting such use by owners of buildings had ever since the enactment of such laws been openly and notoriously violated by numerous persons in the city of Bismarck and other parts of the county with the knowledge and tacit approval of the people generally and of the peace officers, and that the attempt to punish offenders against such laws had generally met with determined resistance and refusal to convict or indict without regard to the evidence furnished by the prosecution; that at the term of court then in session, in the case of State v. Bartheau, the defendant was acquitted on his third trial for violation of the prohibition law, notwithstanding the fact that the Attorney General believed that the evidence introduced was more than sufficient to warrant a conviction, and that such acquittal could not have been by any reason of any reasonable doubt of the guilt of said defendant in the minds of the jurors, but was solely on account of the prejudice against the enforcement of the law, and reference was made in support of that contention to the reporter's record of the evidence introduced on such trial, and that at the first trial in said case at a former term of the district court for Burleigh county, Hon. W. J. Kneeshaw then presiding, repremanded the jury for its disagreement, and that in such case the evidence introduced was substantially the same as in the trial at which said defendant was acquitted; that

the defendant McGillis was the duly elected, qualified, and acting sheriff of said county, and that he himself, and through his deputies, subpœnaed the members of the jury, was in charge of the jury, the courthouse, jury rooms, jail, and courthouse premises, whereby he has easy and ready access to the jury and witnesses in attendance on such court; that said defendant, besides being sheriff, was an active politician of the county, and that at the time of his arrest one James Meyers was his tenant in the building described in the information and that Meyers was also under arrest; that in the case of State v. Higgins, charged with keeping and maintaining a common nuisance as defined by the prohibition law, the defendant Higgins was arrested at the same time that the herein named parties were arrested, and was a tenant of one Patterson in the building described in the information in the last mentioned case, and that Patterson had for many years been a prominent politician in the county, and was then chairman of the county commissioners thereof, and that the prestige of said Patterson and of the respondent, when combined, was so great that in his belief a jury could not be had in the county that would give the state a fair trial in the case of State v. McGillis; that both said Patterson and said McGillis up to that date had for many years last past been at all times directly or indirectly interested in places where intoxicating liquors had been sold in violation of law, or directly engaged in the sale of intoxicating liquors in violation of law, and were the leading influence in Burleigh county that had made possible the prevention of the enforcement of the prohibition law, and that in his belief the interest of said Patterson and the defendant McGillis in preventing conviction would be a common interest for the protection of their respective properties and interests, and that their united efforts would be exerted to prevent the state from obtaining a fair trial; that the prejudice existing in the county against the enforcement of the prohibition law was general, and that among other reasons for his belief was his knowledge of the sentiment of the public obtained through a residence of four years, part of such time having been spent as a prosecuting official whose duty it was to prosecute violators of such law and to inform himself as to general conditions and public sentiment. These allegations are met in return, as far as they are met, by quotations from the affidavits of the defendant McGillis, of Patterson, and of Dullam, one of the defendant's attorneys, and, as far as the recitations of the order of the trial

court denying the change of venue indicate the affidavits of the three persons named constitute the only evidence submitted by the defendant. It will be observed that, although there is no allegation that Patterson had been informed against for permitting his building to be used for illegal purposes under the prohibition law, yet it is positively stated that a tenant of his in such building had been arrested on the charge of violating that law. So it is apparent that patterson stands in nearly the same relation to the prosecution as does defendant McGillis. The return states that McGillis in his affidavit alleges that the charge that he at all times has been or is, directly or indirectly, interested in places where intoxicating liquors have been sold in violation of law, or directly engaged in the illegal sale of such liquors, and had for many years been the leading influence in the county that had made possible the prevention of the enforcement of the law, is false and without foundation, and denies that he has any particular prestige, political or otherwise, but alleges that he was defeated for public office two years ago in the city of Bismarck; that the prestige of said Patterson was not as stated in said affidavit of the Attorney General, but that the said Patterson had twice been defeated for office since the spring of 1907; and that statements that Patterson and the affiant were using, or would use their influence to prevent the enforcement of the prohibition law, are also untrue. This affidavit is largely denials that affiants have at all times been guilty of the acts alleged. The affidavit of Dullum is stated in the return of respondent to be to the effect that during the term of court then sitting four cases had been submitted to juries in which defendants were charged with unlawfully selling intoxicating liquors, in three of which verdicts of guilty were found, and only one defendant was acquitted; that other defendants have pleaded guilty to not registering their United States government licenses; that he had heard many jurors examined as to their qualifications who testified almost without exception that they were in favor of enforcing the provisions of the prohibition law; that he did not believe that Patterson had the prestige ascribed to him by the Attorney General; and that he believed that the state could and would have a fair and impartial trial. He fails to disclose how many of the three persons convicted were convicted in their absence. The remaining portion of his affidavit presents a quibble on the distinction as to public sentiment between the crime of selling intoxicants and

the crime of permitting a building to be used for such purpose illegally. The affidavit of Patterson is in all material respects a duplicate of that made by McGillis, and alleged that the charge that he at all times for many years has been directly or indirectly engaged in the sale of intoxicating liquors, etc., is untrue. The return also states that the affidavits of some thirty or more persons, residents of Burleigh county, were used on the application, but it makes no reference to their contents. The remainder of the return is devoted mostly to showing that the court exercised its legal discretion in denying the change, and in setting forth its construction of the law regarding a change of the place of trial in criminal actions. In my opinion these affidavits do not meet the allegations supporting the application fully, and that the statements contained in such affidavits coming as they do from the defendant and another in a similar position are entitled to very little weight. Many of the statements are mere evasions of the Attorney General's allegations. The fact that McGillis has been defeated for office in the city of Bismarck is immaterial when used to show that an impartial jury can be obtained. The city of Bismarck is but a small portion of the county of Burleigh, and, if such statement is entitled to any consideration, it can only apply to jurors drawn from the city of Bismarck. Patterson does not state what offices he had been defeated for, nor in what part of the county, but it does clearly appear that he was chairman of the board of county commissioners and McGillis sheriff of the county at the time they were claiming to be without political or other prestige. The statements of Dullam's affidavit are immaterial, and those of the thirty citizens cannot be considered because we do not know, and have no means of knowing what they contained.

The order denying the application of the Attorney General recites that it was entered upon the affidavits of Andrew Miller on behalf of the state, and those of McGillis, Patterson and Dullum, on behalf of the defendant, and makes no reference to the court having considered any other evidence or facts. The return is most carefully and ingeniously drawn, and is in the nature of a special plea. The quotations from the affidavits submitted by the defense in a very large degree evade the issue. As I have previously indicated, they are largely devoted to allegations that the parties named have not at all times for many years been engaged in violations of the law, or that their influence is not the leading influence in the

town, or county, or that it has been exagerated by the Attorney General. If the judge of the district court was at liberty to consider his own knowledge of conditions, the order does not state that he did so, or disclose what his knowledge was other than as derived from the affidavits mentioned. I am strongly impressed that, when the Attorney General in his application makes out a case for the change of the place of trial of a criminal action, it is mandatory upon the court to grant it. The English authorities cited in the case of Barry v. Truax, 13 N. D. 131, 99 N. W. 769, 65 L. R. A. 762, 112 Am. St. Rep. 662, are not accessible, but the opinion in that case was written after a most careful and searching examination of all authorities bearing on the subject, and, if I read it aright, the Court there found that by the common law of England on the application of the Crown or the Attorney General a change of the place of trial was granted as of course. It also found that the common law was in force in such proceedings in this state except in so far as the procedure was regulated by statute. The statute does provide for an application by the state's attorney, but it does not tend to regulate the procedure on the application of the Attorney General. Section 10320, Revised Codes 1905, reads: "The procedure, practice and pleadings in the district courts in this state, in criminal action or in matters of a criminal nature, not especially provided for in this code, shall be in accordance with the procedure, practice and pleadings under the common law." The omission of the Legislature to make provision regarding the change in place of trial on application of the Attorney General doubtless occurred for the same reason that so few authorities are found relating to a change on his application. It is stated in the Barry Case at page 146, where it is said: "It is true that most of the reported cases on this subject are where the application was by the defendant. The reason for this is found in the fact that the Crown's right was an admitted one, whereas that of the defendant rested upon an exercise of the court's discretion, and the latter was therefore most frequently the subject of judicial inquiry. The Crown's right was seldom, if ever, challenged, and no case has been cited or found by us where it was denied." In this country the statutes of many of the states fully regulate the procedure. Likewise many of the statutes limit the right to a change of the place of trial from the county where the offense is charged to have been committed to the defendant,

unless on the application of the state he waives his right to a trial in the county. For this reason a large proportion of the authorities cited in the majority opinion are not relevant. The Kent Case is an authority only when the defendant makes the application. There is a distinction where no specific regulation is imposed by the statute between applications on the part of the defendant and those made on behalf of the state. If the granting of the change on the application of the state rests solely within the discretion of the trial court, in many counties where criminal statutes are in disfavor and are ignored by the people and the officials the discretion of the trial judge in passing upon such applications is in practical effect nonreviewable, as follows from the majority opinion, and the state might as well abandon all attempts to protect the lives, the liberty or the property of its subjects in such counties and submit at once, and as gracefully as possible, to the domination of the criminal and lawless elements in some localities. I cannot agree that the rights of a single individual are any more sacred than are those of the people. The object of all statutes providing for a change of the place of trial is to secure justice and to guard against injustice, and it was never contemplated that the laws should be perverted to deny justice or protection to the sovereign people of the state by reason of local prejudice preventing the election of unbiased and fair officials whose duty it is to administer and execute the criminal laws. No court ought to place any such construction on our system of criminal procedure, unless the legislative branch of the government has made it clear by express language that it should do so, and even then its power might be questioned.

A statement in the paragraph of the return not heretofore referred to and not mentioned in the majority opinion requires notice. I quote: "That respondents are fully convinced and believe from their observation and knowledge of the situation existing in Burleigh county, N. D., wherein said action of the State of North Dakota v. Duncan McGillis is now pending, that both parties thereto may and will have a fair and impartial trial before the average jury that would be procured in such county." It is apparent that this statement is intended to bolster up and strengthen the conclusion of the district judge and the order denying the application for a change of the place of trial. It indicates that in reaching his

35

decision he did not confine himself to a consideration of the evidence submitted by the parties, but that he also proceeded upon the theory that he might legally consider his own knowledge of the situation existing in Burleigh county. I do not attempt to discuss the correctness of this position, because it is unnecessary to do so, but I am satisfied that if he has a legal right to take into consideration the results of his own observations and his own knowledge, and render a decision either wholly or in part based upon his observations and knowledge of conditions without disclosing, either in the order denying the application or in his return, the extent and character of such knowledge and observations, his order is as much nonreviewable as though the statute or Constitution had made it so in express language. This court can never in such case determine to what extent the decision of the trial court was predicated upon its undisclosed knowledge derived from sources independent of the evidence submitted by the parties. In most cases the trial court is bound to judge of the application as well as of the adequacy of the defense by a consideration of the evidence presented. See Ruff et al. v. Phillips et al., 50 Ga. 130; Scroggins v. State, 55 Ga. 380. And to admit that that court may take matters outside of the record, information obtained from whatsoever source, into consideration in arriving at its decision, or to hold in this case that there was not an abuse of discretion, when the fact that the court did take such matters into account, as disclosed by his return, is not to hold that a change of the place of trial rests upon the sound legal discretion of the lower court, but is, in effect, to hold that in every instance where that court says it took into consideration evidence outside of the record, and fails to disclose the substance thereof, its decision is final, and that this court in such instances ceases to be a court of last resort, but that the district court by its own act constitutes itself the final arbiter of the rights of the public. This court can in the presence of such a statement in a return never say that the trial court abused its discretion. Had the order denying the application or even the return included a statement of the facts claimed to be within the knowledge or observation of the trial court relevant to the matters at issue, a different question would be presented. It would then be possible for this court to pass upon the exercise of the discretion of the trial court, but if that court can, as in effect, follows from the majority opinion, determine such an application upon the knowledge

possessed by the judge, and not imparted to him officially or in the shape of evidence the nature of which is not disclosed in the record made, it may be seriously questioned whether in its supposed power to review the discretion of that court this court may not, and should not, call into exercise the result of its own observations, and take judicial notice of facts transpiring in Burleigh county relating to the trial of those charged with violating criminal laws, the rarity of convictions even on conclusive evidence, and of facts and matters occurring at and relating to such trials in that court which are, and have been for many years, notoriously public, and of the present and past attitude of the public toward the subject.

In conclusion I am satisfied that, if the writ carrying the change should only be granted on an abuse of discretion being shown, the return is inadequate and fails to meet the showing made by the Attorney General on behalf of the state, and that, in any event, on the application of the Attorney General and a case being made, the change should be granted as of course.

ELLSWORTH, J. (dissenting). The application presented by this case is that this court issue "a supervisory writ requiring the district court of Burleigh county and Honorable W. H. Winchester, as the judge thereof, to certify to this court the records, files, and proceedings in a certain criminal action entitled the State of North Dakota v. Duncan J. McGillis, to the end that said records, files, and proceedings may be reviewed by the Supreme Court, and justice may be done in the premises." In response to an order to show cause issued from this court the respondents filed a return in which, after a lengthy showing directed entirely to the end that the Attorney General is not entitled to the writ applied for, they "protest that they shall not be required to transmit to this court, or be commanded to do so, all the pleadings, orders, affidavits and records in said action of the State of North Dakota v. Duncan J. McGillis and all the records of proceedings had in the said criminal action, or any of them, and ask that said application therefor be disallowed and dismissed."

In my view the only point presented to this court for decision is that of whether or not upon the application and showing made by the Attorney General the writ of certiorari should issue. The Attorney General does not make specific application for this writ; but it is apparent from his moving papers that the writ of certiorari is the only supervisory writ under which he can receive any relief

whatever. This being the case I think the application should be read as though it were expressly made for a writ of certiorari from this court to the district court of the Sixth judicial district. I believe that jurisdiction of this court to determine any of the points passed upon in the majority opinion is dependent entirely upon the writ and cannot be acquired by any other means. The moving papers, both of the Attorney General and of the respondents, are directed entirely to the point of whether or not the writ shall issue. The Attorney General applies for the issuance of a supervisory writ and the respondents protest against it, and direct their entire showing to the point that they should not be required to do the things that will be required of them in case the writ issue.

The majority opinion seems to proceed on the theory that an oral stipulation of counsel made on the hearing to the effect that the proceeding may be disposed of on its merits on the showing made dispenses with the necessity for the writ. This stipulation can have the effect of waiving the writ provided only that it appears the full purpose of the writ is accomplished by the return. It is apparent at a glance that such is not the case. Fragmentary excerpts from the record that was before the district court, together with the conclusions of persons interested in the outcome of this proceeding as to what the record contains and the legal construction to be placed on the statutes involved, cannot be said to bring before this court the evidential facts on which the district court acted. Yet the return contains only this as appears from the opinion of Judge SPALDING.

I regard it as a matter of the highest importance that this court in deciding any of the very important questions presented upon this proceeding should have before it the entire record acted upon by the judge of the district court. Further than this, I believe that without such record this court is without jurisdiction to make any order in any manner affecting the ruling of the judge of the district court, whether he has regularly pursued the authority of such court or not. I can think of no reason deserving of the slightest weight why questions affecting the sovereignty of the state should be disposed of upon an incomplete, mutilated or imperfect record when this court has full power by the issuance of a prerogative writ to bring the entire record before it.

So far as the question may be properly considered, as to whether or not a judge of the district court is vested with a discretion authorizing him to deny a change of venue in a criminal case when application is made therefor by the Attorney General, as is shown to have been made in this case, I fully concur in the conclusions reached by Judge SPALDING. If such discretion is conceded to exist, however, upon the question of whether or not the district court abused its discretion in denying a change of the place of trial in the case of State v. McGillis, I am of the opinion that this court is precluded from taking any action whatever by reason of the fact that it has not before it the showing made to the district court. The application of the Attorney General upon its face discloses a state of facts which unquestionably authorizes this court to issue a writ that will enable it to fully review these interesting and important questions, and in my opinion the writ of certiorari should issue.

(122 N. W. 1111.)

## NOTE.

Affidavit for change of venue must state facts not conclusions. Ter. v. Egan, 3 Dak. 119, 13 N. W. 568; State v. Chapman, 1 S. D. 418, 47 N. W. 411; see also State v. Palmer, 4 S. D. 546, 57 N. W. 490. A trial does not begin until a jury is impanneled; and a change of venue may be had at any time before then. State v. Kent, 5 N. D. 516, 67 N. W. 1052. Relying on verbal promise of attorney, and allowing time to answer to expire, precludes change of venue, 8 S. D. 11, 65 N. W. 34. Change of venue in civil action for convenience of witnesses, may be granted on application of one co-defendant the other not objecting. Fletcher v. Church, 11 S. D. 537, 78 N. W. 947. See also Small v. Gilruth, 8 S. D. 287, 66 N. W. 452. Need not send to adjoining county whose courthouse is nearest. Waldron v. Evans, 1 Dak. 11, 46 N. W. 607. Judge not limited to adjoining counties. Murphy v. District Court, 14 N. D. 542, 105 N. W. 738. Duty of selecting place of trial is with the judge in the exercise of a sound discretion. Murphy v. District Court, 14 N. D. 542, 105 N. W. 728; Zinn v. District Court, 17 N. D. 135, 114 N. W. 472. Where discretion is vested in the trial judge his act will be reviewed only for abuse, Murphy v. District Court 14 N. D. 542, 105 N. W. 728. Order for change of venue is appealable. Robertson Lumber Co.

v. Jones, 13 N. D. 112, 99 N. W. 1082.    Facts sufficient to order change.  Id.  The "right to trial by jury" is subject to change of venue at the instance of the state.  Barry v. Truax, 13 N. D. 131, 99 N. W. 769.  Statute authorizing a change of venue at the instance of the state is constitutional.  Barry v. Truax, 13 N. D. 131, 99 N. W. 769 ; Zinn vs. District Court, 17 N. D. 135.  Change of venue in justice court cannot be had after overruling of demurrer.  Walker v. Maronda, 15 N. D. 63.    State may have change of venue under the same circumstances as defendant.  Zinn v. District Court, 17 N. D. 135 ; 114 N. W. 472.