[File No. 83, Cr.]

STATE OF NORTH DAKOTA, Respondent, v. DAVID BOSSART and John Ellingson, Appellants.

(240 N. W. 606.)

Opinion filed February 2, 1932.

*F. J. Graham* and *L. T. Van Slyke,* for appellants.

*C. A. Whipple,* State's Attorney and *George W. Thorp,* for respondent.

Burr, J. The defendants are charged with transporting intoxicating liquors for use as a beverage, and while armed with loaded fire arms.

The prosecution was commenced in Dickey county. Upon the application of the State the place of trial was changed to Barnes county. The defendants were found guilty as charged, judgment was entered in conformity with the verdict and each defendant sentenced.

A motion for a new trial was made and denied. From the judgment and sentences imposed the defendants appeal.

There are thirty-four specifications of error and appellants classify them into four propositions in support of the appeal—that the court erred in granting the change of venue; that the opening statement to the jury, made by the counsel for the State, was so prejudicial in character as to deprive the defendants of a fair trial; that the court erred in the charge to the jury and in the admission and rejection of evidence —there being twenty-nine specifications of error under this heading affecting about ninety rulings and the court erred in failing to grant a new trial.

The application for change of venue is based upon eight affidavits with copy of a newspaper, and the defendants filed twenty-six affidavits and copies of newspapers in opposition thereto. Appellants say that the affidavits filed by the State do not make a prima facie showing, that "all contained conclusions and not facts and that there is nothing in the affidavits to warrant the action of the court."

An examination of the affidavits filed by the State shows that owing to the activity of the sheriff against these defendants and two others, in which one of the others was killed by the sheriff, an inflamed state of mind was created throughout the entire county; that newspapers which circulated in the county were active in stirring up prejudice against the sheriff; and that said newspapers had so distorted facts as to create ill feeling. The acts of the sheriff, and the general agitation and inflamed state were set forth in full, together with copies of the newspaper. It is true counter-affidavits were also filed; but the affidavits supporting the application make a showing which, if true, justified a change. The trial court examined these affidavits and decided that the showing was sufficient. The state has a right to a change of venue in proper cases. Comp. Laws, § 10,868. Zinn v. District Ct. 17 N. D. 135, 114 N. W. 472; Barry v. Traux, 13 N. D. 131, 65 L.R.A. 762, 112 Am. St. Rep. 662, 99 N. W. 769, 3 Ann. Cas. 191. Determination of this matter is primarily a matter for the trial court, guided by judicial discretion. State v. Winchester, 18 N. D. 534, 122 N. W. 1111, 21 Ann. Cas. 1196; Lowe v. District Ct. 48 N. D. 1, 6, 181 N. W. 92. Our examination shows the judicial discretion of the court was not abused.

It is charged the counsel for the state was permitted to make "an inflammatory and prejudicial statement to the jury at the opening of

.the trial." The record shows extracts from the statement made by the counsel stating the State intended to prove that at the time the crime was committed the sheriff had been called to the village of Merricourt to investigate the burglary of a store and that while making such investigation came in contact with these defendants in the store and with two others alleged to be connected with the crime prosecuted.

These other persons, were also connected with this burglary and the State expected to show that while the sheriff was nearing the home of these persons he came in contact with an automobile driven by the defendants; that this automobile was examined and intoxicating liquors found therein; that there were loaded fire arms in the automobile and that the State intended to show that the liquor came from the home of one of these other persons, and was being transported by the two defendants in this case. In his statement he spoke of these defendants as part of a gang, and that the whole of the gang was engaged that evening in robbing a store and transporting this liquor. The defendants objected to these statements on the ground that they contained references to another crime, and to other defendants and that the effect was to lead the jury to believe the defendants belonged to a gang of thieves.

It appears that one of these other members, one Mikkelson, was shot and killed by the sheriff who was investigating the store robbery; that the discovery of this transportation of liquor was made while the sheriff was investigating this burglary and one keg was secreted in merchandise said to have been stolen during the burglary. The two cases were so closely interwoven that the counsel for the State deemed it necessary to show how the sheriff happened to come in contact with the two defendants in the commission of this crime charged, and how he, later, identified a keg. There were two automobiles involved—one in which the liquor was being transported, and one in which the sheriff and Mikkelson rode and which followed the other. The sheriff ordered the driver of the forward car to proceed and while following he was assaulted by Mikkelson, according to his claim, and killed Mikkelson in self defense; but this melee permitted the defendants in the forward car to escape temporarily, and to attempt to secrete the liquor afterwards recovered. There were four separate and distinct individuals connected with the automobiles and charged with the various crimes

—burglary, larceny and possession of stolen property. The court, upon objection by the defendants, directed the counsel for the State to leave out of his statement any reference to other crimes stating:

"Do not get into any long argument here. You can refer to these defendants, but you must not say anything definite until proof is rendered. . . .

"Well, counsel should avoid connecting the defendants with any other crime. You have to leave that out of this statement. There is only one crime they are charged with."

In the charge to the jury the court stated that any statement made by counsel for either side, not warranted by the evidence, should be wholly disregarded.

There was no misconduct on the part of the counsel in making the statements charged to him. He was merely stating what the State intended to prove, "if so permitted by the court." Many of the facts peculiar to this case could not be understood properly without some reference to this burglary, to the killing of Mikkelson, and to the other matters mentioned, and the action of the trial court was sufficient in this case to safeguard the rights of the defendants.

Appellants urge this was introducing proof of other crimes, and cite State v. Apley, 25 N. D. 298, 48 L.R.A.(N.S.) 269, 141 N. W. 740; State v. Heaton, 56 N. D. 357, 217 N. W. 531, and other cases, in support of the contention that in the trial of one criminal case "the State may not introduce evidence of other specific crimes except under certain limited circumstances, none of these circumstances being present in this case."

In the latter case cited we held that "Relevancy is, in the main, the test of the admissibility of evidence," and that "if evidence otherwise relevant is offered, the fact that incidentally it tends to establish collateral matters or to prove collateral crimes does not render it inadmissible." In this case, as heretofore indicated, the investigation which led to the discovery of the crime charged was caused by reason of the burglarizing of a store in Merricourt. All in all five persons became involved—the two defendants in this case, two brothers of the defendant Bossart, and one Mikkelson. Upon the store being burglarized the sheriff began his investigation. While searching for the burglars he took Mikkelson into custody. In the prosecution of this

case the apprehension of the defendants, their possession of the liquor, their escape,—the car in which they were, the secreting of the liquor, and all of the facts gathered there were relevant to the case. True some of the Bossarts were charged with complicity in the burglary—in fact they were convicted of grand larceny and their appeal is pending in this court—but the jury could not be given a clear and complete understanding of the charge involved in this case without some reference to facts which were connected with the burglary, the larceny of the property taken, and the connection of the other Bossarts therewith, for the liquor was taken from the homes of these other men. In general, therefore, facts which might tend to establish another crime committed by other persons could not be kept out of the case. The cases cited by appellants are not applicable to the case here.

Misconduct on the part of the counsel for the State is alleged in his interrogation of witnesses relative to the same matters. These however, are treated more appropriately under the rulings of the court as the questions were challenged by objection.

Twenty-eight of the specifications of error deal with ninety rulings on evidence. The majority cover pages of testimony and numerous rulings, some of which sustain the objections of the defendants. This method of specifying error is followed in specifications 5, 6, 7, 9, 11 to 16, 20 to 24 and 27 to 30. For example, specification 9 is an extract of all of the testimony in the case beginning with line 24 page 58 of the transcript and down to and including line 7 of page 70. This specification includes 21 rulings by the court, some favorable to the defendants in sustaining their objections, the others against them, and many of the latter are correct.

Owing to the nature of the case, however, we examine all of these specifications.

Specifications 4 and 5 are based upon the theory that the evidence regarding the personal property taken in the burglary is merely proof of another crime. The sheriff told of his search of the car in which the defendants were, the finding of a keg of whiskey therein, the taking of this keg into his own car, the observation of a keg in the back of defendants' car, that Ellingson was ordered to drive ahead, that during the scuffle with Mikkelson he got away but later was apprehended, and asked what he had done with the keg, that Ellingson stated "you got

me, I might as well tell you where it is," that Ellingson stated he had hidden the keg alongside the road, that the sheriff went to the place, searched the ditch, and found a keg. Although all of this evidence is set forth in the specifications there was no objection made until the sheriff was asked what he found in the ditch. The objection was interposed—"unless it be limited only to the keg about which the sheriff has already testified as to having found in the Ellingson car." The witness was told "Don't comment on it, only just tell what you found there," and he said he "found the keg of whiskey, box of prunes, two pair of shoes, and cans of tomatoes, pickles, stuff of that sort in the grocery line." Another question was asked and then the defendant stated that "we move the answer be stricken out as regards finding any keg of whiskey, there being no testimony at this time that there was any keg of whiskey in the car driven by Ellingson." The State withdrew the word "whiskey" and asked him if he found the keg. He answered, "Yes." And was then asked whether this merchandise and the keg were found together. He said "Yes." All this was received without objection. He was then interrogated regarding the keg for the purpose of identification and then, over the objection of the defendant that it was "incompetent, irrelevant and immaterial to any issue in this case," was permitted to answer the question whether this "merchandise was in that Ellingson car when you first caught Ellingson,"—and he answered "Yes." This testimony was offered for the purpose of identification of the keg found in the ditch with the keg seen in the Ellingson car, as the keg while in the car was embedded in a quantity of merchandise and this same merchandise was found in the ditch along with the keg. The court admitted it saying, "Well, just for the purpose of identification it is allowed." There was no error in permitting this.

Specifications 10, 11, 12 with some others, deal with the evidence introduced regarding the shooting of Mikkelson. On direct examination the sheriff made no reference to the shooting of Mikkelson. The defendants cross-examined him, asking if he did not have a gun on his person, another in the car, a shotgun and a rifle, and he was asked "shortly after you turned that corner to go east did you take and shoot Roy Mikkelson?" This was the first time the shooting was injected in the case, and the method of injection. He was cross-examined in

regard to "What gun of your arsenal did you shoot him with?" where he shot him, whether Mikkelson died instantly, what effort the sheriff made to secure a doctor, whether it made him nervous to kill a man, etc., and such like questions. It was the defendants who opened up this matter and upon redirect examination the State interrogated in regard to the trouble between the sheriff and Mikkelson which led to the killing in order to correct any impression the jury might have as to the reliability of the sheriff, claiming the defendants attempted to prove the sheriff was an irresponsible, unreliable, reckless individual who would shoot without provocation. The State asked: "How did you happen to have the custody of Mikkelson?" and over the objection of the defendant the court permitted an answer stating "I am going to allow that now inasmuch as the defendant has gone into it." These specifications of error contain a large number of rulings some of which are favorable to the defendants, sustaining their objections and there was no error in permitting examination along this line, as the matter was introduced by the defendants themselves. This reference is illustrative of the connection between the two crimes and the way matters relevant to each were intermingled in this case.

Specification No. 6 alleges the court was in error in allowing the sheriff to testify as to a conversation with defendant Bossart with reference to the whiskey keg, alleging that this conversation was not binding upon the other defendant, he not being present. The State offered it as against Bossart only. There was no error in overruling this objection.

Specification 20 deals with a portion of the cross-examination of the defendant Bossart. It is an extract of all of the transcript from line 21 of page 150 to line 4 of page 152, inclusive. There are at least four objections in this testimony, and four rulings. One of these rulings overruled an objection to a question asked the witness as to whether he had been convicted of crime in New Jersey. Certainly this ruling was correct. A witness may be interrogated as to previous convictions in order to affect his credibility. See State v. Kent (State v. Pancoast) 5 N. D. 517, 557, 35 L.R.A. 518, 67 N. W. 1052; Schnase v. Goetz, 18 N. D. 594, 120 N. W. 553. The State was not satisfied with his denial of a conviction and asked: "Were you not finger printed in the state of New Jersey, in 1925?" To this he

answered, "No." And then objection was made that this was "frivolous, and not proper cross-examination." The witness again denied and his counsel added to the objection that "the witness has already stated he was never in the state of New Jersey; not proper cross-examination." The defendant was then asked if he had ever been in custody of the officers in New Jersey and let out on probation. All this is included in the one specification of error. There was no attempt to prove arrest, or "finger printing," other than the questions addressed to the defendant and answered negatively. Some of the rulings are correct and while there may be some question regarding others on the whole, for mere arrest or even "finger printing" is no proof, yet it is clear such error was error without prejudice.

The defendant Ellingson was on the stand in his own behalf and was cross-examined by the State. Specification 28 deals with a part of his cross-examination and includes all of the testimony beginning with line 9 of page 219 of the transcript to line 7 of page 223 with nine objections. Some of the rulings are favorable to the defendant and some unfavorable. In the main this portion deals with his reason for throwing the merchandise into the ditch along with the keg of whiskey and naturally had reference to the taking of the goods from the store. We cannot consider this blanket specification for the record shows much of such examination was material.

There are other specifications dealing with the introduction of the exhibits the merchandise, the keg of whiskey and such property. All were relevant, and inasmuch as the specification dealt with numerous rulings without showing wherein any specific one is prejudicial we find no error has been shown.

Specification 31 alleges error in an instruction given to the jury. The record does not show requests for instruction. The court gave a written charge and no exceptions were taken or filed. Consequently we cannot consider this specification of error.

The record does not show affirmatively that the written charge was first submitted to counsel for examination as permitted by § 10,825 of the Compiled Laws. If so submitted and no exceptions taken and filed we cannot consider the specification of error. If not first submitted to the counsel it is in no better position for the state than an oral charge, and while an oral charge is deemed excepted to in order

that the other party may have an opportunity to examine it after delivered and transcribed, yet these exceptions must be reduced to writing and filed within the time fixed by statute. Not having filed any such exceptions the right thereto is waived. See State v. Shoars, 59 N. D. 67, 228 N. W. 413; State v. Reilly, 25 N. D. 342, 141 N. W. 720; State v. Balliet, ante, 703, 240 N. W. 604.

Specifications 33 and 34 say the verdict is contrary to the evidence, and the court erred in denying the motion for a new trial.

The evidence is contradictory. The defendants testified and furnished witnesses. Nevertheless, there is ample evidence to sustain the verdict, if the jury believed the evidence furnishd by the State and disbelieved that furnished by the defendants.

The trial court carefully reviewed the testimony and considered it amply sufficient to sustain the verdict. The court said: "I am of the opinion that the defendants in this case have had a fair trial. They were represented by able counsel, and their rights were at all times fully protected. The jurors that tried this case were intelligent and exceptionally good jurors, and I am satisfied that a fair trial was had, and in my opinion a new trial should not be granted."

No reversible error being shown the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.