[File No. Cr. 160.]

STATE OF NORTH DAKOTA, Appellant, v. T. H. McENROE, Respondent.

(283 N. W. 57.)

Opinion filed December 9, 1938.

*P. O. Sathre,* Attorney General, *Milton K. Higgins,* Assistant Attorney General, *A. R. Bergesen,* State's Attorney, and *Odin J. Strandness,* Assistant State's Attorney, for appellant.

*Shure & Murphy,* for respondent; *T. H. McEnroe,* in pro. per.

NUESSLE, J. The defendant McEnroe was informed against on a charge of violating subsection 3 of § 40 of chapter 94, Session Laws 1931, which provides that a director, officer, agent or employee of any building and loan association who wilfully makes or concurs in mak-

ing or publishing any written report, exhibition or statement of its affairs or pecuniary condition containing any material statement which is false, shall be guilty of a felony. The defendant was tried on this charge and a verdict of guilty was returned against him. He moved in arrest of judgment but this motion was denied and judgment was entered on the verdict. He then made a motion for a new trial, which was granted, and a new trial was ordered. Thereupon the state perfected the instant appeal.

Chapter 94, Session Laws 1931, is entitled "An act to provide for the government and regulation of building and loan associations in the state of North Dakota; to provide for the organization and operation of such associations; and (a repeal clause)." Pursuant to the terms of this chapter domestic building and loan associations may be incorporated and do business as such within the state of North Dakota. Foreign building and loan associations complying with the requirements of the provisions of the chapter may likewise do business within the state. Sections 38, 39 and 40 thereof, with which we are particularly concerned, read as follows:

"Sec. 38. Annual Statement—Form—Where Filed—Publications. Every building and loan association authorized to do business in this state shall, annually on the thirty-first day of December or within thirty days thereafter file with the State Examiner a full detailed report, in writing, of the affairs and business of the association for the fiscal year ending on December thirty-first, showing its financial condition at the end of said year. The statement shall be in such form and contain such information as may be prescribed by the State Examiner. It shall be sworn to by the secretary of such association and its correctness attested by at least three directors or an auditing committee appointed by the board of directors. The original shall be filed with the State Examiner within thirty days after the close of the fiscal year, and in such form as the State Examiner shall require shall be published once in a newspaper published in the town in which the association is located, or if no newspaper is published in the town in which the association is located, then in one published nearest thereto in the same county and such proof of publication shall be furnished at such times and in such manner as may be required by the State Examiner.

"Sec. 39. Report to State Examiner. Publication. Every building and loan association shall make to the State Examiner a report of condition whenever requested to do so by the State Examiner, according to the form which may be prescribed by him, verified by the oath or affirmation of the president, vice-president or secretary of such association, and attested by the signature of at least two of the directors. Each such report shall exhibit in detail and under appropriate heads, the resources and liabilities of the association at the close of business on any past due day by him specified; and shall be transmitted to the State Examiner within fifteen days after the receipt of a request or requisition therefor from him.

"Sec. 40. Obtaining Property By Fraud, False Reports, Inspection of Books. A director, officer, agent, or employee of any building and loan association who:

"(1)  .  .  .  .  .  .  .  .  .  .

"(2)  .  .  .  .  .  .  .  .  .  .

"(3) Wilfully makes or concurs in making or publishing any written report, exhibition or statement of its affairs or pecuniary condition, containing any material statement which is false; or

"(4)  .  .  .  .  .  .  .  .  .  ."

The information on which the defendant was tried charges:

".  .  .  that heretofore  .  .  .  one T. H. McEnroe  .  .  .  did commit the crime of wilfully making a false written report and statement of a building and loan association, committed as follows, to-wit.

## "Count One

"That at the said time and place the said defendant, T. H. McEnroe, was an officer, to-wit: the President of the Washington Building and Loan Association, a building and loan association corporation of Fargo, North Dakota, and as such officer the said Defendant did then and there wilfully, fraudulently and feloniously make a written report and statement of the affairs and pecuniary condition of the said building and loan association, which was thereon designated the annual report of the condition of the said association at the close of business on December 31, 1935, and which report contained in the portion thereof which purports to set forth the resources of the said association, a material false statement, to-wit: "Cash on

hand and in bank, $2,353.87" whereas in truth and in fact the cash on hand and in bank of the said association at the close of business on December 31, 1935, was but $638.12, and which false report the said Defendant made, knowing the same to be false as to the said statement of cash on hand and in bank, by then and there signing and affixing his name to the said report at the conclusion thereof, as President of said association and corporation and sending and presenting the said report to the State Bank Examiner of the State of North Dakota and filing the said report with the said examiner.

## "Count Two

"Count Two is identical with Count One, excepting that where in Count One the word 'make' is used in Count Two the words 'concur in making' are used."

When arraigned the defendant demurred to the information on the grounds: (1) That § 40, supra, is unconstitutional and void because enacted contrary to the requirements of § 61 of the Constitution of the state of North Dakota, which provides "No bill shall embrace more than one subject which shall be expressed in its title  . . .  ;" (2) that more than one offense is charged in the information contrary to the provisions of § 10,688, Comp. Laws 1913; and (3) that the facts stated in the information are not sufficient to constitute a public offense. The demurrer was overruled.

The motion for a new trial was predicated upon (1) Errors of law arising during the course of the trial; (2) Misdirection of the jury in matters of law; (3) That the verdict was contrary to law and against the evidence; and (4) A showing of newly discovered evidence material to the defense which the defendant could not with reasonable diligence discover and produce at the trial. The court granted the motion and ordered a new trial. In his memorandum opinion the trial judge, after stating that many errors were assigned as grounds for said motion said, among other things: "After studying the case at some length, I have concluded that no good would come from a discussion of the various errors assigned by the defendant. The evidence in this case is of a very peculiar nature and character. . . ." The court then stated that in view of the character of the testimony of the principal witness he would discuss but one error

assigned, and after a discussion of this error, assigned on account of an alleged erroneous ruling with respect to the admission of evidence, further said: "In view of this situation, and the nature and character of the testimony in the case, the court is of the opinion that a new trial should be granted."

The record is long. It would be profitless to analyze and review it at length here. It is enough to say, as did the trial court, that the evidence is of a peculiar nature and character. The trial court who saw and heard the witnesses and breathed the atmosphere of the trial, was of the opinion that the motion for a new trial should be granted. While the assignment of error which he discusses in his memorandum opinion is based on a ruling on evidence, which we will hereafter refer to, nevertheless he considered also the whole record and particularly the testimony of the state's chief witness in making his decision. In passing upon a motion for a new trial where the evidence is considered, the trial court is clothed with a wide discretion and his determination in that regard will not be disturbed unless it can be said such discretion was abused. See State v. Weber, 49 N. D. 325, 191 N. W. 610; State v. Strong, 52 N. D. 197, 201 N. W. 858; Martin v. Parkins, 55 N. D. 339, 213 N. W. 574; Miller v. First Nat. Bank, 62 N. D. 122, 242 N. W. 124. And where in such case a motion for a new trial is granted, a stronger showing must be made on appeal in order to secure a reversal than would be required where the motion is denied. Donahue v. Boynton, 62 N. D. 182, 242 N. W. 530. In the instant case the trial court in his memorandum opinion stressed an alleged erroneous ruling on a matter of evidence. The facts with respect to the same are as follows: The state introduced evidence tending to show that the defendant had misappropriated certain moneys, the property of the building and loan association in question, and that on account of this misappropriation the report that was made by the defendant was wilfully and intentionally false. The defendant in presenting his defense took the stand. He testified that there had been no misappropriation of the funds in question by him; that his income during the years 1934 and 1935, independent of his connection with the building and loan association, amounted to several thousand dollars annually; that during that time he had a large bank account and so there was no rea-

son why he should use funds belonging to the association. On cross-examination, counsel for the State inquiring with respect to this matter, asked whether he had made income tax reports to the state and federal governments. This question was objected to on the ground that it was immaterial. The objection was overruled and the defendant was required to answer. His answer was that he had not made such reports. The defendant contends that this evidence tended to establish independent offenses and was, therefore, inadmissible and so its admission constituted prejudicial error. We cannot agree. The State was attempting to test by cross-examination the truthfulness of the defendant's statement as to his income and so it was proper to inquire as to whether or not he had made an income tax return as would have been required had he had the income as claimed. The mere fact that this inquiry might adduce testimony tending to establish an independent and unrelated offense did not render it objectionable. If the testimony was relevant, and we think it was, then, regardless of its effect in the way of establishing an independent offense, it was proper on cross-examination. See State v. Heaton, 56 N. D. 357, 217 N. W. 531, and cases cited. See, also, State v. Flath, 61 N. D. 342, 237 N. W. 792; State v. Bossart, 61 N. D. 708, 240 N. W. 606; State v. Gammons, 64 N. D. 702, 256 N. W. 163; State v. Berenson, 65 N. D. 480, 260 N. W. 256. But the court did not predicate his ruling on this ground alone. He considered as well the other assignments of error and the whole record, particularly the testimony of the State's chief witness in making his decision. As we have stated, the motion for a new trial was predicated upon errors of law, including misdirection of the jury, upon the insufficiency of the evidence, and upon a showing of newly discovered evidence. We think it is fair to say that all of these other matters were considered by the court in making his determination. But, in any event, where an order granting a new trial is correct it will be sustained even though the ground assigned by the court in making it is not a good one. See Security State Bank v. Security State Bank, 54 N. D. 582, 210 N. W. 83; Lawler v. Ose, 60 N. D. 280, 234 N. W. 390.

In the instant case the defendant, in support of his motion for a new trial, made a very strong showing as to newly discovered evidence. The State's case depended largely upon the testimony of Hazel Fred-

rickson. She was the secretary of the association and kept its books and records. Her testimony was that the money which it was charged the defendant had embezzled was appropriated and used by the defendant; that while this was done with her knowledge she permitted it to be done and made no complaint about the matter because of coercion on the part of the defendant. Inquiry was made of her on cross-examination as to whether she herself had appropriated and used the money which was embezzled or any part of it. She denied she had done so. The defendant in support of his motion for a new trial produced the affidavit of an officer of the trust company which had bonded Hazel Fredrickson, wherein it was stated that such trust officer in making inquiry as to the alleged shortage had interviewed Miss Frederickson and inquired of her concerning the matter; that she then stated she had appropriated to her own use a large sum of the association's money and detailed various items for which she had used such funds aggregating more than a thousand dollars, and that while she could not be sure that this was all that she had thus misappropriated, she was certain that she had not used more than two thousand dollars altogether; that she at no time stated that defendant had taken any of the funds in question. It was further recited in this affidavit that the maker thereof had not disclosed to the defendant or to anyone connected with the defense the facts with respect to the matter until more than month after the trial of the cause. There was a further showing on the part of the defendant that neither he nor his counsel knew and that they had no means of knowing that such statements were made by Miss Fredrickson, and that they did not learn that she had made them until after the trial of the case. Considering the nature and importance of Miss Fredrickson's testimony as given, and the showing as to this and other newly discovered evidence, which was of such a character as would largely minimize the effect of her testimony, we are of the opinion that it would have been reversible error not to have ordered a new trial. Accordingly, after a careful examination of the whole record, we are of the opinion that the order must be affirmed.

What we have said above disposes of the instant appeal. But in view of the fact that there must be a retrial, we deem it expedient to consider some of the challenges to the information raised by the

defendant's demurrer and some of the other alleged errors on which he relied on his motion.

His first contention in support of the demurrer is that chapter 94, supra, contravenes § 61 of the Constitution, heretofore quoted, in that with respect to § 40 the act is broader than its title. This contention is grounded on the proposition that there is nothing in the title to indicate that the act penalizes violations of the regulatory provisions thereof. Even so, there is no merit to the contention. We have heretofore had occasion to consider the purpose and effect of § 61 of the Constitution. As this court said in State ex rel. Goodsill v. Woodmansee, 1 N. D. 246, 46 N. W. 970, 11 L.R.A. 420: "This provision is intended to forestall what Judge Cooley denominates 'log-rolling' legislation, and prevent legislation not fully understood by members of the legislature, as well as to prevent all surprises or misapprehensions on the part of the public. But it has been uniformly held that such provisions should receive a reasonable and not a technical construction, and that no matter should be held to invalidate a statute so long as such matter related exclusively to the same subject, or was germane or auxiliary thereto."

Chapter 94 provides for the government, regulation, organization and operation of building and loan associations. It is beyond question that the provisions for the punishment of violations of the regulatory requirements of the act are germane and auxiliary to the subject thereof within the principle noted and approved in the Woodmansee case. See, also, State ex rel. Gaulke v. Turner, 37 N. D. 635, 164 N. W. 924; First State Bank v. Kendall Lumber Co. 107 Or. 1, 213 P. 142; Lewis's Sutherland, Stat. Constr. 2d ed. §§ 118, et seq.; Cooley Const. Lim. 8th ed. pp. 296, et seq.; 59 C. J. 814; 25 R. C. L. p. 843.

He next contends that the information contravenes the provisions of § 10,688, Comp. Laws 1913, in that each of the two counts charges a separate and distinct offense and so the information is bad for duplicity. This contention is necessarily predicated upon the theory that subsec. 3 of § 40, supra, creates two separate and distinct offenses, to-wit: the offense of making or publishing and the offense of concurring in making or publishing. This contention, however, misconceives the statute. The offense is single. But it may be committed either by the making or publishing or by concurring in the making

or publishing of the false reports in the manners described in the statute. See State v. Kerr, 3 N. D. 523, 58 N. W. 27; 31 C. J. 764, et seq.; Bishop, Statutory Crimes, § 244; Bishop, New Crim. Proc. § 434. And, as we held in State v. Bickford, 28 N. D. 36, 147 N. W. 407, Ann. Cas. 1916D, 140, "Where the statute declares an act unlawful when perpetrated in any one or all of several modes, the information may charge the act in separate counts, basing each count upon the different modes specified."

Now as to the contention that the facts stated in the information are not sufficient to constitute a public offense. Clearly the information is drawn under subsec. 3 of § 40 of chapter 94. The report, exhibition or statement of an association's affairs or pecuniary condition therein referred to, is not every report or statement that might be made by the persons named in the statute. This penal provision was inserted in the act in order to insure compliance with the regulatory provisions thereof. Accordingly, while the statute says "any report or statement" it is obvious that the report or statement thus referred to is one required to be made by the provisions of § 38 or 39. Now it is impossible to say from a reading of the information whether the offense charged is intended to be predicated on an annual statement made pursuant to § 38 or on a report made pursuant to § 39. They differ in many respects. It is to be noted that the statement required by § 38 is an annual report. The statute says it shall be sworn to by the secretary of the association and its correctness attested by three directors or an auditing committee appointed by the board of directors. It must be in such form as the examiner may prescribe. And "it shall be filed with the examiner within thirty days after the close of the fiscal year." The information alleges only that the defendant as president of the association on March 5, 1936, made and signed the report and statement in question "which was thereon designated the annual report of the condition of the association on December 31, 1935." It is not alleged that the report in question was made as and intended to be the annual statement required to be made by that section, nor is it alleged that it was made and verified by the defendant as president for and in the stead of the secretary. On the other hand, § 39, supra, requires that every association shall make a report of condition when requested to do so by the state examiner which shall be verified by the president,

vice president or secretary and attested by the signature of at least two directors. The information contains no allegation that the report in question was upon the request of the examiner or that it was made pursuant to such a request. Thus the allegations of the information with respect to the report or statement charged to have been falsely made fit neither of these sections.

The defendant also challenges certain of the instructions given to the jury, and among others, that respecting the corroboration of the testimony of an accomplice required under the statute, § 10,841, Comp. Laws 1913. We think that this challenged instruction is subject to criticism. See, State v. Coudotte, 7 N. D. 109, 72 N. W. 913, where the requirements and effect of § 10,841 are fully considered. But, in view of the fact that doubtless on a new trial the challenged instruction will not again be given, we need not further consider it at this time. We likewise refrain from passing upon various other contentions made by the defendant since upon another trial the matters on which they are predicated may not arise.

Order affirmed.

CHRISTIANSON, Ch. J., and BURR and MORRIS, JJ., concur.

SATHRE, J., being disqualified, did not participate, Hon. HARVEY J. MILLER, Judge of Sixth Judicial District, sitting in his stead.

MILLER, Dist. J. (dissenting in part).

I concur in the foregoing opinion, excepting the finding that the facts stated in the information are insufficient to constitute a public offense.

Clearly the information was drawn under subsec. 3 of § 40 of chap. 94. This section makes it a felony for a director, officer, agent or employe of any building and loan association to make or concur in making or publishing any false written report of a material fact required under §§ 38 and 39 of the same chapter.

Both §§ 38 and 39 provide that the kind of report mentioned in each shall be made by the association. Section 38 refers to the annual report and requires it to be sworn to by the secretary and its correctness attested by at least three directors or an auditing committee, while

§ 39 refers to reports demanded by the examiner to be verified by the president, vice president or secretary of such association and attested by at least two directors.

That the information was drawn under § 38 is without doubt, for it is alleged that the report was designated the annual report and purported to describe the financial condition of the association at the close of business on December 31, 1935. No reference is made to a special report demanded by the state examiner covering the association's financial condition on any specified past due day. The only implication that the information was drawn under § 39 is the fact that the defendant signed the report as president of the association.

An information is sufficient if it contains a statement of the acts constituting the offense in ordinary and concise language and in such manner as to enable a person of common understanding to know what is intended. 1913 Comp. Laws, §§ 10,685–10,693.

The information is not confusing. It recites that the defendant as president of the association made and concurred in making a false report designated as the annual report for the period ending December 31, 1935.

But one offense is charged, notwithstanding that the "making" and "concurring in the making" are alleged in separate counts, and it is immaterial, so far as the sufficiency of the information is concerned, which count describes the crime.

While §§ 38 and 39 are germane in considering § 40 it is the latter which defines the crime and affects any officer who "wilfully *makes* or *concurs* in making or publishing *any* written report. . . ."

"Concur" has been defined to mean: To unite or agree (in action or opinion) : to approve; acquiesce; assent. Webster's Dictionary.

Conceding that the president of such an association could not be guilty of making a false annual report under § 38 because same should be verified by the secretary, nevertheless he may by concurring in such act be deemed guilty of the crime.

The information alleges that he did concur in the commission of such act and is in my opinion sufficient.